**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION As Receiver for Sunbelt Savings Association of Texas, and Sunbelt Service Corporation, Appellants and Cross–Appellees,**

v.

**T.F. STONE–LIBERTY LAND ASSOCIATES and Tommy F. Stone, Appellees and Cross–Appellants.**

No. 05–88–01325–CV.

Court of Appeals of Texas, Dallas.

March 9, 1990.

Rehearing Denied April 13, 1990.

Nina Cortell, Haynes & Boone, Charles R. Haworth, Andrews & Kurth, Dallas, for appellants and cross-appellees.

Charles W. Cunningham, Stephen Cormac Carlin, Frank E. Sheeder, III, Johnson & Gibbs, Dallas, for appellees and cross-appellants.

Before WHITHAM, ROWE and BAKER, JJ.

## OPINION

WHITHAM, Justice.

Appellants, Federal Savings and Loan Insurance Corporation, as receiver for Sunbelt Savings Association of Texas, and Sunbelt Service Corporation, appeal from a judgment on the verdict in favor of appellees, Tommy F. Stone, T.F. Stone Companies, Inc. and T.F. Stone–Liberty Land Associates. Service is a wholly owned subsidiary of Sunbelt. We conclude that certain federal law issues are dispositive of this appeal. Those issues are framed in three of FSLIC and Service's points of error. Under their forty-fifth point of error, FSLIC and Service argue that FSLIC's appointment as receiver caused all evidence introduced at trial of matters extraneous to banking records to have been improperly admitted as a matter of federal law. Under their forty-sixth point of error, FSLIC and Service argue that the Stone parties are not entitled to awards for usury, punitive damages or attorney's fees as a matter

of federal law. Under their forty-seventh point of error, FSLIC and Service argue that federal law defenses apply even though judgment had been entered before FSLIC's appointment. The federal law issues are grounded on *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) and the Federal Deposit Insurance Act of 1950, as amended, 12 U.S.C. section 1823(e). We agree with FSLIC and Service. Accordingly, we reverse and remand.

In light of our disposition of this appeal, we reach none of the state law issues. Hence, we deem it unnecessary to fully summarize the facts of this dispute. Suffice it to say that the controversy has its genesis in four written agreements between Service and the Stone parties: (1) a land loan, (2) a construction loan, (3) a purchase agreement and (4) a management agreement. The Stone parties brought this suit for damages, penalties and other relief arising from breach and fraudulent inducement of the four agreements, and arising from wrongful foreclosure, breach of fiduciary duty, and usury in connection with the construction loan. The relief granted by the trial court may be summarized from the components of the trial court's judgment:

ACTUAL DAMAGES

| | | |
|---|---|---|
| Construction Loan | $ 8,502,049 | |
| Service's breach | | |
| Service's fraudulent inducement | | |
| Savings' breach of agreement to issue letters of credit | | |
| Service's and Savings' breach of fiduciary duty | | |
| Wrongful foreclosure of Liberty Plaza II | | |
| [Return of Liberty Plaza II] | | |
| Land Loan | $ 9,502,048 | |
| Service's breach | | |
| Service's fraud—release of cross default | | |
| Service's and Savings' breach of fiduciary duty | | |
| Wrongful foreclosure of Liberty Land Tract | $ 2,407,597 | |
| Breach of Phase II Contract | $12,701,751 | |
| Breach of Management Rights Contract | $ 2,000,000 | |
| Breach of Fiduciary Duty | $ 295,484 | |
| Non–Duplication Damages | | |
| Total Actual Damages | | $35,408,929 |

EXEMPLARY DAMAGES

| | | |
|---|---|---|
| Fraud | $ 4,500,000 | |
| Breach of Fiduciary Duty | $ 2,000,000 | |
| Wrongful Foreclosure of Liberty Plaza II | $ 1,000,000 | |
| Wrongful Foreclosure of Liberty Land Tract | $ 2,000,000 | |
| Fraudulent Inducement of Stone's Guaranty | $ 1,000,000 | |
| Total Exemplary Damages | | $10,500,000 |

USURY PENALTY

| | |
|---|---|
| Statutory penalties and return of interest paid | $18,921,224 |

| ATTORNEY'S FEES | $ 300,000 |
|---|---|

In addition to this relief, FSLIC and Service assert that the judgment entitles the Stone parties to receive other relief including:

| | |
|---|---|
| Value of Liberty Plaza II | $18,000,000 |

Conveyed free and clear of encumbrances in
lieu of wrongful foreclosure damages
Voided deficiencies owed to Sunbelt and Service

| | |
|---|---|
| Owed on Liberty Plaza II (approx.) | $ 8,100,000 |
| Owed on Liberty Land Tract (approx.) | $16,800,000 |
| Prejudgment Interest (approx.) | $ 6,700,000 |

---

Thus, FSLIC and Service assert that the trial court's total "package" included a net benefit to the Stone parties of approximately $114,730,153. For the reasons that follow, we conclude that we must reverse the total "package" and remand for a new trial in which FSLIC and Service may assert their federal law defenses.

### A Brief Introduction to The Federal Law Defenses

■ The federal law defenses are sometimes referred to as *D'Oench* or section 1823(e) defenses. The nature of the federal law defenses takes form from the Supreme Court's decision in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Indeed, in *Langley*, the Supreme Court tells us that prior to enactment of section 1823(e) in 1950, *D'Oench, Duhme & Co.* was the leading case in this area. *See Langley v. FDIC*, 484 U.S. 86, 92, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987). The Congress codified *D'Oench* as the Federal Deposit Insurance Act of 1950, section 2(13)(e), 64 Stat. 889, as amended, 12 U.S.C. section 1823(e). *See FSLIC v. Kroenke*, 858 F.2d 1067, 1070 (5th Cir.1988). *D'Oench* applies to FSLIC in its receivership capacity. *Kroenke*, 858 F.2d at 1070. Section 1823(e) provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

One purpose of section 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. *Langley*, 484 U.S. at 91, 108 S.Ct. at 402. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities, *see* 12 U.S.C. §§ 1817(a)(2), 1820(b), and when the FDIC is deciding whether to liquidate a failed bank, *see* § 1821(d), or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank, *see* § 1823(c)(2), (4)(A). *Langley*, 484 U.S. at 91, 108 S.Ct. at 402. The last kind of evaluation, in particular, must be made with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services. *Langley*, 484 U.S. at 91, 108 S.Ct. at 402. Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions. *Langley*, 484 U.S. at 91–92, 108 S.Ct. at 402. A second purpose of section 1823(e) is implicit in its requirement that the "agreement" not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record "contemporaneously" with the making of the note and have been approved by officially recorded action of the bank's board or loan committee. *Langley*, 484 U.S. at 92, 108 S.Ct. at 403. These latter requirements ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure. *Langley*, 484 U.S. at 92, 108 S.Ct. at 403. Neither purpose can be adequately fulfilled if an ele-

ment of a loan agreement so fundamental as a condition upon the obligation to repay is excluded from the meaning of "agreement." *Langley,* 484 U.S. at 92, 108 S.Ct. at 403. From these sources the federal law defenses here at issue developed. In short, schemes or arrangements likely to mislead banking authorities (*see Langley,* 484 U.S. at 92–93, 108 S.Ct. at 402–04) gave birth to the federal law defenses. Of necessity much of this introduction of the federal law defenses will be repeated as we dispose of the issues presented. Hopefully, we have provided some hint as to how all this got started.

### The Role of the Federal Deposit Insurance Corporation in the Affairs of an Insolvent Savings and Loan

■ On August 9, 1989, President Bush signed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989). FIRREA abolished the FSLIC, but this does not affect the validity of any right, duty, or obligation of FSLIC. FIRREA § 401(f)(1), 103 Stat. at 356. FIRREA also provides that no action commenced by or against FSLIC abates as a result of the enactment of the bill, except that the appropriate successor to the interest of FSLIC shall be substituted as a party. FIRREA § 401(f)(2), 103 Stat. at 356. Because Savings was closed prior to January 1, 1989, FIRREA places its assets in the FSLIC Resolution Fund, which is managed by the Federal Deposit Insurance Corporation, in its capacity as statutory successor to FSLIC as manager of the FSLIC Resolution Fund for Savings. FIRREA § 215, 103 Stat. at 252. Hence, we conclude that federal law applicable to the Federal Deposit Insurance Corporation applies in the present case. At this point, we also note that FDIC Corporate, who is the manager of the FSLIC Resolution Fund under section 215 of FIRREA, has a different purpose and function from FDIC Receiver, who is the "real" receiver herein (*see* n. 3 below). However, the distinctions between these FDIC entities are of no import in this case. The reason for this is that, as noted below, under 12 U.S.C. section 1821(d)(13)(B)(i), FDIC Receiver has the rights and remedies available to FDIC Corporate. These "rights and remedies" include, as we shall illustrate below, the defenses contained in 12 U.S.C. section 1823(e) which accrue to FDIC Corporate. With this in mind, we now proceed to the substance of the issues brought forth for our determination. We begin with a discussion of the many questions presented under FSLIC and Service's point of error forty-seven. In their forty-seventh point of error, FSLIC and Service contend that *D'Oench* applies in this case even though judgment had been entered prior to the appointment of FSLIC as receiver.

### The Question of Waiver of the Federal Law Issues

■ The Stone parties insist that the trial court properly denied FSLIC and Service's motion to vacate or for new trial because it was untimely. Chronology becomes important. The trial court entered judgment on August 1, 1988. Thereafter, on August 19, 1988, the Federal Home Loan Bank Board declared Savings insolvent and appointed FSLIC as Receiver. Service and Savings filed a motion for new trial on August 29, 1988, amended it on August 31, 1988, and supplemented it on September 27, 1988. None of the motions raised any of the affirmative defenses provided by *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny (the "*D'Oench* defenses"). On October 15, 1988, all post-trial motions were overruled as a matter of law. On October 27, 1988, over two months after it became the receiver for Savings, FSLIC appeared in this action. That same day—87 days after the trial court entered the Judgment and 12 days after all post-trial motions were overruled as a matter of law—FSLIC and Service filed a motion to vacate the judgment or for new trial (the "*D'Oench* motion") raising the *D'Oench* defenses for the first time. Therefore, we have this post-verdict chronology:

August 1—Judgment entered.

August 19—FSLIC becomes receiver for Savings.

August 29—Service and Savings file a timely motion for new trial. (No mention of *D'Oench* defenses.)

August 31—Service amends the August 29 motion. (No mention of *D'Oench* defenses.)

September 27—Service files a supplemental motion to reform judgment and supplemental motion for new trial. (No mention of *D'Oench* defenses.)

October 15—All post-judgment motions are overruled as a matter of law under Rule 329b(c) of the Texas Rules of Civil Procedure.

October 27—FSLIC and Service file their *D'Oench* motion (*D'Oench* defenses mentioned for the first time.)

November 9—Trial court denied *D'Oench* motion.

Therefore, we must decide the "untimely" question as to the *D'Oench* federal law issue within the rule applicable to the October 27 filing. Rule 329b(e) of the Texas Rules of Civil Procedure reads:

If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

In the present case, FSLIC and Service filed the *D'Oench* motion twelve days after the original timely motion for new trial had been overruled by operation of law. Thereafter, twenty-five days after the original motion was overruled, the trial court denied the *D'Oench* motion stating in its order that the court had "reviewed the motion and heard the arguments of counsel." When a motion for new trial is made and overruled on its merits during the period that the trial court retained its plenary power, the trial court's action is reviewable on appeal. *See Jackson v. Van Winkle,* 660 S.W.2d 807, 808–09 (Tex.1983). (In *Jackson,* a motion and an amended motion for new trial were filed after the date pre-

scribed by the rules, but while the trial court retained its plenary power over the judgment. Within that time period, the trial court considered the merits of the motion and overruled it. The Texas Supreme Court held that because the trial court overruled the motions while it retained plenary jurisdiction, "[s]uch action evidences an understanding on the part of the trial court that its actions would be reviewable on appeal." *Jackson,* 660 S.W.2d at 808.) We conclude, therefore, that because the *D'Oench* motion was overruled on its merits within the period that the court retained its plenary power, the action of the trial court is reviewable on appeal. It follows that, as a matter of state law, FSLIC and Service timely raised the *D'Oench* issues in the trial court. Although the trial court considered the merits of the *D'Oench* motion, we conclude that we need not determine whether the trial court abused its discretion in denying the *D'Oench* motion. We reach this conclusion because, for the reasons that follow, we have determined that as a matter of federal law the *D'Oench* defenses apply in the present case. Therefore, the law does not afford the trial court an area in which it had any discretion. *Cf. Jackson,* 660 S.W.2d at 809 (newly discovered evidence). For the above reasons, we hold that FSLIC and Service did not waive their federal law defenses and that FSLIC and Service preserved error.

### *The Question of Whether D'Oench Federal Law Defenses Are Available Post–Trial Court Judgment*

■ The Stone parties maintain that even if FSLIC and Service preserved error, the *D'Oench* defenses remain unavailable because FSLIC and Service cannot raise *D'Oench* defenses to eviscerate a valid state court judgment rendered before the receivership. The Stone parties rely upon *Federal Savings & Loan Ass'n v. Kennedy,* 732 S.W.2d 1, 2 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). We disagree with *Kennedy's* holding that when FSLIC was appointed receiver on April 4, 1986, following the March 12, 1986, trial court entry of judgment, FSLIC did not

have the right to relitigate Kennedy's claim and that it "simply stepped into the shoes" of the failed institution, having the same but no greater rights than the failed institution to challenge the trial court's final judgment. *See Kennedy,* 732 S.W.2d at 3. We reach this conclusion because the Stone parties' assertion that FSLIC as receiver simply stepped into the shoes of the institution ignores rights that FSLIC as receiver possesses that exceed those of the failed institution. We reason that FSLIC as receiver is analogous to a trustee in bankruptcy, which not only steps into the shoes of the debtor, but also the "overshoes" of additional rights under federal law. *See Schneider v. O'Neal,* 243 F.2d 914, 918 (8th Cir.1957). Not the least of these additional rights is the application of *D'Oench* and 12 U.S.C. section 1823(e) to bar the assertion of claims not embodied in bank records. Furthermore, sovereign immunity protects FSLIC from imposition of punitive awards absent express waiver by Congress. *Commerce Fed. Sav. Bank v. FDIC,* 872 F.2d 1240, 1247–48 (6th Cir.1989). Moreover, controlling policies also protect FSLIC from imposition of penalties such as usury as discussed below. Consequently, we decline to follow *Kennedy.* In doing so, we note that *Kennedy* was decided prior to the adoption of FIRREA. Thus, our sister court of appeals did not have the benefit of an explicit federal statute, to wit: 12 U.S.C. section 1821(d)(13).

■ Next, we consider the applicability of certain federal legislation and judicial decisions bearing upon the question of whether *D'Oench* federal law defenses are available post-trial court judgment. First, we note the matter of "assets." For the notes and guaranty not to be part of the assets of Savings and Service, a final resolution of their validity would be required. However, as a matter of federal law, the judgment below is not final for all purposes. Section 1730(k)(1) of Title 12 of the United States Code provides in pertinent part that:

No attachment or execution shall be issued against the Corporation [FSLIC] or its property before final judgment in any action, suit, or proceeding in any court of any State or of the United States or any territory, or any other court.

Similarly, 12 U.S.C. section 91 states that "no attachment, injunction, or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court." In *United States v. Lemaire,* 826 F.2d 387 (5th Cir. 1987), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1223, 99 L.Ed.2d 423 (1988), the court reviewed 12 U.S.C. section 91 and determined that "final judgment" as used in section 91 (which we conclude to be virtually identical to section 1730(k)(1)) "means a judgment on the merits which is no longer subject to examination on appeal, either because of disposition on appeal and conclusion of the appellate process, or because of the passage, without action, of the time for seeking appellate review." *Lemaire,* 826 F.2d at 390. Hence, we conclude that the identical nature of the two statutes makes the court's holding in *Lemaire* applicable to both statutory provisions. Therefore, it follows that as a matter of federal law the trial court's judgment was not final as to FSLIC. Since the trial court's judgment was not final, the notes and guaranty were not "void." We conclude, therefore, that the trial court's August 1, 1988 judgment is not "final" so as to bar FSLIC from asserting *D'Oench* federal law defenses post-trial court judgment in an effort to protect "assets" of the failed institution. We reach this conclusion because the trial court's judgment is not one "which is no longer subject to examination on appeal." *See Lemaire,* 826 F.2d at 390. Moreover, in this connection, we would treat disposition in the Supreme Court of Texas on application for writ of error or disposition in the Supreme Court of the United States on petition for writ of certiorari as within the appellate process contemplated by 12 U.S.C. section 91. We treat the statute in this way for the benefit of those who would draw distinctions between the right of appeal on the one hand and discretionary judicial review on the other hand.

■ We now turn to the impact of FIRREA on the question of whether *D'Oench*

federal law defenses are available post-trial court judgment. We conclude that Congress clarified the question by enactment of FIRREA. FIRREA amended 12 U.S.C. section 1821 to now provide:

**(d)(13) Additional Rights and Duties**

**(A) Prior Final Adjudication**—The [FDIC] shall abide any final *unappealable* judgment of any court of competent jurisdiction which was rendered before the appointment of the [FDIC] as conservator or receiver.

**(B) Rights and Remedies of Conservator or Receiver**—In the event of *any appealable judgment,* the [FDIC] as conservator or receiver shall—

(i) have all the rights and remedies available to the insured depository institution (before the appointment of such conservator or receiver) and the [FDIC] in its corporation capacity....

12 U.S.C. § 1821(d)(13)(A), (B); 103 Stat. at 232 (emphasis added). We conclude that this statute provides that FSLIC (now FDIC) on appeal can assert all rights available to it, including section 1823(e) and *D'Oench.*[1] Nevertheless, the Stone parties assert that section 1821(d)(13)(B) concerns only "standing," not the applicability of *D'Oench* post-judgment. We disagree. Section 1821(d)(13)(B) speaks to "rights and remedies," not standing. Indeed, sections 1821(d)(13)(A) and (B) distinguish between unappealable and appealable judgments and in the case of appealable judgments, authorizes the exercise of all "rights and remedies" available not only to the failed institution but all "rights and remedies" available to FSLIC in its corporate capacity. Clearly one of those "rights" is the protection given FSLIC by section 1823(e) against matters extraneous to bank records. We conclude that this construction of FIRREA is consistent with Congress' general approach throughout FIRREA of incorporation-by-reference to grant additional powers to a receiver. *See, e.g.,*

12 U.S.C. § 1823(d) (acquiring assets). Indeed, the Committee on Banking, Finance and Urban Affairs, in its report concerning FIRREA stated that "[t]he appointment of a conservator or receiver can often change the character of litigation," recognizing the compelling need for additional procedural safeguards when public, rather than private, funds are at issue. H.R.REP. No. 101–54(I), 101st Cong., 1st Sess. at 331, *reprinted in* 1989 U.S.CODE CONG. & ADMIN. NEWS at 127. Thus, Congress chose to give FSLIC the ability to assert the *D'Oench* and section 1823(e) defenses post-judgment as a matter of public policy—to preserve the public treasury.

We recognize that our holding that 12 U.S.C. sections 1821(d)(13)(A) and (B) provide that FSLIC (now FDIC) on appeal can assert all rights available to it, including section 1823(e) and *D'Oench,* places this Court in disagreement with federal circuit court decisions. This Court, however, is not bound by decisions of lower federal courts. *See Wichita Royalty Co. v. City Nat'l Bank of Wichita Falls,* 306 U.S. 103, 109, 59 S.Ct. 420, 422, 83 L.Ed. 515 (1939); *Stewart v. State,* 686 S.W.2d 118, 121 (Tex. Crim.App.1984), *cert. denied,* 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985), *Omniphone, Inc. v. Southwestern Bell Telephone Co.,* 742 S.W.2d 523, 526 (Tex.App. —Austin 1987, no writ). Nevertheless, the Stone parties cite three federal circuit court cases in arguing that *D'Oench* does not apply after judgment. *See Grubb v. FDIC,* 868 F.2d 1151 (10th Cir.1989); *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n,* 885 F.2d 266 (5th Cir.1989); *Thurman v. FDIC,* 889 F.2d 1441 (5th Cir.1989). In light of FIRREA, we decline to follow these three cases. We do so for the following reasons. The *Grubb* decision reasoned that a judgment "voiding" an asset left no asset for the receiver to acquire. *Grubb,* 868 F.2d at 1158. This reasoning ignores the fact that an appealable judgment might

---

**1.** As noted above, FSLIC was abolished by FIRREA § 401(f)(1), 103 Stat. at 356. However, this does not affect our determination of this appeal, since FSLIC's statutory successor, the FSLIC Resolution Fund, which is managed by the FDIC, FIRREA § 215, 103 Stat. at 252, has the same rights as FSLIC or FDIC under 12 U.S.C. § 1821(d)(13). FIRREA § 401(f)(1), 103 Stat. at 356. For the purposes of this opinion, we will continue to refer to the receiver as FSLIC, not as FSLIC Resolution Fund or FDIC.

484

be reversed, and economic value remains in the asset itself. The *Grubb* court also thought that the judgment provided a reliable record that the notes were "void" without considering that in *Langley*, the Supreme Court rejected knowledge of the FDIC as a defense to *D'Oench*. *Compare Langley*, 484 U.S. at 93–95, 108 S.Ct. at 404–06 *with Grubb*, 868 F.2d at 1158–59. The *Grubb* court further failed to understand that a judgment falls short of satisfying the requirement of *D'Oench* and section 1823(e) of bank records contemporaneous to a transaction. Hence, we decline to follow *Grubb* to the extent that *Grubb* can be read to hold that the *D'Oench* federal law defenses are unavailable and cannot be raised to eviscerate a Texas state court appealable judgment rendered before the receivership. *Grubb* was cited by the Fifth Circuit in the two later opinions.[2] Next, we consider *Olney* which issued October 10, 1989.

Since *Olney* specifically addresses FIRREA, which was signed by the President on August 9, 1989, we deem it important to point out our difference with that decision. We quote from *Olney* that part necessary to focus our disagreement:

FSLIC argues that, under Section 212 of the newly-enacted Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), which was signed by the President on August 9, 1989, they are entitled to raise § 1823(e) on appeal. The relevant section, which amends and restates 12 U.S.C. § 1821, provides:

"(B) Rights and remedies of Conservator or Receiver—In the event of any appealable judgment, the Corporation as conservator or receiver shall—
(i) have all the rights and remedies available to the insured depository institution (before the appointment of such conservator or receiver) and the Corporation in its corporate capacity, including removal to Federal court and all appellate rights . . ."

Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, § 212, 103 Stat. 183, 222 (1989). FSLIC argues that this new provision allows conservators to raise § 1823(e) on appeal for the first time, after the entry of a final judgment to which they were not a party. We read the same section, and find that it means that conservators and receivers are given standing to pursue all appeals, where before its enactment only FDIC acting in its corporate capacity could pursue certain claims. This section gives FSLIC no new substantive rights in this appeal.

*Olney*, 885 F.2d at 275. We disagree with *Olney* for two reasons. First, we cannot agree that 12 U.S.C. section 1821(d)(13)(B) concerns only "standing" and not the applicability of *D'Oench* post-judgment. We conclude that section 1821(d)(13)(B) speaks to "rights and remedies," not standing. Sections 1821(d)(13)(A) and (B) distinguish between unappealable and appealable judgments and in the case of appealable judgments authorizes the exercise of all "rights and remedies" available not only to the failed institution but all "rights and remedies" available to FSLIC in its corporate capacity. We reason that one of those "rights" is the protection given FSLIC by section 1823(e) against matters extraneous to bank records. Second, the reader will note that *Olney* omits reference to subpart (A) of 12 U.S.C. section 1821(d)(13) and instead considers only subpart (B) pertinent to the inquiry. As discussed above, we view subpart (A) necessary also to the inquiry. We repeat our understanding of FIRREA. Subparts (A) and (B) of section 1821(d)(13) distinguish between unappealable and appealable judgments; and in the case of an appealable judgment (as in the present case) authorizes the exercise of all "rights and remedies" available not only to the failed institution, but all "rights and remedies" available to FSLIC in its corporate capacity.[3] Therefore, contrary to *Ol-*

---

**2.** *It is important to note that Grubb was decided on February 16, 1989, long before FIRREA was passed. Thus, the Grubb court, like the above-mentioned Kennedy court, did not have the ben-* efit of an explicit federal statute, to wit: 12 U.S.C. § 1821(d)(13).

**3.** In this connection, we recognize that FSLIC Receiver and FSLIC Corporate are distinct gov-

*ney,* we read the newly enacted 12 U.S.C. section 1821 to allow FSLIC to raise *D'Oench* defenses and section 1823(e) on appeal for the first time. We reach this conclusion because the trial court judgment in the present case is not a "prior final adjudication." Instead, the trial court's judgment is an "appealable judgment" as distinguished from an "unappealable judgment." Hence, we decline to follow *Olney* to the extent that *Olney* can be read to hold that the *D'Oench* federal law defenses are unavailable and cannot be raised to eviscerate a Texas state court appealable judgment rendered before the receivership.

This brings us to the third case relied upon by the Stone parties. *Thurman* issued November 29, 1989. While *Thurman* also does not allow the FSLIC to assert its *D'Oench* defenses post-trial court judgment, it reaches its conclusions based upon *Grubb* and makes no mention of *Olney* or of 12 U.S.C. section 1821(d)(13). *See Thurman,* 889 F.2d at 1446–47. For the reasons and to the extent we decline to follow *Grubb* and *Olney,* we decline to follow *Thurman* to the extent that *Thurman* can be read to hold that the *D'Oench* federal law defenses are unavailable and cannot be raised to eviscerate a Texas state court appealable judgment rendered before the receivership.

Further, we find another case dealing with 12 U.S.C. section 1821(d)(13)(B)— *FDIC v. Taylor,* 727 F.Supp. 326 (S.D.Tex. 1989), which was decided on December 19, 1989. In *Taylor,* the FDIC was appointed receiver for MBank twenty-nine days after a Texas state court had entered judgment against it. *Taylor,* 727 F.Supp. at 327. FDIC removed the case to federal court twenty-nine days after its appointment as receiver. *Taylor,* 727 F.Supp. at 327. The federal district court held Taylor's arguments as to the availability of removal by FDIC post-judgment to be mooted by the passage of FIRREA. *Taylor,* 727 F.Supp. at 328. As noted above, the new 12 U.S.C. section 1821(d)(13)(B) provides that "[i]n

the event of any appealable judgment, the [FDIC] as ... receiver shall have all the rights and remedies available to ... the [FDIC] in its corporate capacity, including removal to Federal court and all appellate rights." In *Taylor,* the court, without citing any federal cases—only the statutes, held that one of the "remedies available to FDIC in its corporate capacity" was the power of removal under 12 U.S.C. section 1819(b)(2)(B). *Taylor,* 727 F.Supp. at 328. In the present case, one of the "remedies available to FDIC in its corporate capacity" is the *D'Oench* and section 1823(e) defenses. We believe the reasoning of *Taylor* to be applicable to the present case.

For the above reasons, we hold that the *D'Oench* federal law defenses are available and can be raised to eviscerate a Texas state court appealable judgment rendered before the receivership.

### The Question of FSLIC Knowledge of the Trial Court's Judgment

■ Having held that FSLIC can raise *D'Oench* defenses and section 1823(e) defenses on appeal for the first time, we reach the Stone parties' contention that FSLIC's knowledge of the trial court judgment at the time FSLIC was appointed receiver bars the application of *D'Oench* defenses and section 1823(e). We conclude that the United States Supreme Court has determined the matter adversely to the Stone parties in the Court's disposition of the petitioners' "fall back" position. *Langley,* 484 U.S. at 93, 108 S.Ct. at 404. Knowledge of the misrepresentation by the FDIC prior to its acquisition of the note is not relevant to whether section 1823(e) applies. *Langley v. FDIC,* 484 U.S. at 93, 108 S.Ct. at 404. Harm to the FDIC (and those who rely upon the solvency of its fund) is not avoided by knowledge at the time of acquiring the note. *Langley,* 484 U.S. at 94–95, 108 S.Ct. at 405–06. *The harm to the FDIC caused by the failure to record occurs no later than the time at*

---

ernmental entities with separate functions. FSLIC Receiver is responsible for the orderly liquidation of defunct savings associations while FSLIC Corporate is responsible for the payment

of accounts. *Thurman,* 889 F.2d at 1441. Of course this distinction no longer exists since the abolition of the FSLIC. *See* note 1 above.

*which it conducts its first bank examination that is unable to detect the unrecorded agreement* and to prompt the invocation of available protective measures, including termination of the bank's deposit insurance. *Langley*, 484 U.S. at 95, 108 S.Ct. at 404 (emphasis added). Indeed, *Langley* disposes of the Stone parties' contention succinctly. "The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; *and an agreement that does not meet them fails even if the FDIC knew.* It would be rewriting the statute to hold otherwise." *Langley*, 484 U.S. at 95, 108 S.Ct. at 404 (emphasis added). For the above reasons, we hold that FSLIC's knowledge of the trial court's judgment at the time the FSLIC was appointed receiver does not bar the application of *D'Oench* and section 1823(e) defenses.

### The Question of Application of Section 1821(d)(13) to the Present Case

■ The Stone parties assert that application of section 1821(d)(13) to the present case would be "retroactive" and improper. The Stone parties point to the declaration of Representative Ortiz, during the debates on the passage of FIRREA, stating:

Mr. Speaker, I seek to clarify the intent and effect of the prospective application of the proposed bill. I understand that this bill would redefine and augment the powers of the Federal Deposit Insurance Corporation when that Corporation serves as a receiver for a failed financial institution. The powers set forth in this bill are, in many respects, new, and there is no intent that such powers be applied to receiverships that have been established prior to the enactment of this bill.

135 CONG.REC. H5003 (daily ed. August 3, 1989). After study of the legislative history of FIRREA, including the remainder of the debates and committee reports, we conclude that this single, isolated statement of the position of one member of Congress (who was not a member of the committee which drafted FIRREA) is unpersuasive as an indication of Congress' intent. In deter-

mining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive. *United States v. Turkette*, 452 U.S. 576, 581, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981). Therefore, the best indication of the intention of Congress is the language of section 1821(d)(13)(B) itself: the statute applies to appealable judgments, which we have in the present case; the statute applies to claims barred by *D'Oench*, which we conclude the Stone parties' claims to be; and the statute commands that the FDIC have certain rights on appeal, which directly speaks to the present situation. We conclude that the above quoted statement of Representative Ortiz is of no moment. First, no similar language is contained in FIRREA itself. Second, the revision and augmentation of the powers of the FDIC as receiver are so extensive that the focus of the remarks cannot be targeted. Third, the scope of *D'Oench* as it existed prior to the enactment of FIRREA as applied in this case is not new. Fourth, the remarks of Representative Ortiz are unmistakably indicated by the Congressional Record to be "words inserted or appended, rather than spoken, by a member of the House on the floor." Finally "isolated remarks [of members of Congress] are entitled to little or no weight" in interpreting legislative history. *See Murphy v. Empire of America, FSA*, 746 F.2d 931, 935 (2d Cir.1984). Thus, we turn to discuss whether the "retroactive" application of FIRREA is improper.

■ It is true that, generally, laws are presumed to operate only prospectively and not retrospectively. *See United States v. Security Industrial Bank*, 459 U.S. 70, 80, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982). However, this principle accrues only to retrospective application of laws affecting *substantive* rights. *See Security Industrial*, 459 U.S. at 80–81, 103 S.Ct. at 413–14. Moreover, another rule applies during appellate review—a change in applicable law during the pendency of an appeal will be given effect by the reviewing court.

In *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801), the Court held:

> It is in the general true that the province of an appellate court is only to inquire whether a judgment when rendered was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed.

*Schooner Peggy*, 5 U.S. (1 Cranch) at 110. *See also* P. Bator, D. Meltzer, P. Miskin & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System, 369 n. 4 (3rd ed. 1988) (*Schooner Peggy* states an "ancient principle"). More recently, the Court reiterated its holding in *Schooner Peggy* when it held:

> We anchor our holding in this case on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary.

*Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). *Ziffrin, Inc. v. United States*, 318 U.S. 73, 78, 63 S.Ct. 465, 468, 87 L.Ed. 621 (1943) (A change in the law between a *nisi prius* and an appellate decision requires the appellate court to apply the changed law). As noted above, there is no "statutory direction or legislative history to the contrary" in this case. The determination of whether manifest injustice would result centers on three factors identified in *Bradley:* (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in the law upon those rights. *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019. In this case, the first factor weighs in favor of applying the law now in effect. When the United States or one of its agencies is a party and the issue is one of broad public policy, application of the current law is favored. *See Criger v. Becton*, 702 F.Supp. 761, 765 (E.D.Mo.1988) (quoting *Bradley*, 416 U.S. at 718–19, 94 S.Ct. at 2019–20). The second *Bradley* factor concerns injustice that may result by applying the new law to a person or entity who would be deprived of a mature or unconditional right. *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020; *Criger*, 702 F.Supp. at 765. The Stone parties have no matured or unconditional right to any recovery in this case. The judgment below, while in this Court, was superseded by appellants, which had the effect of holding the judgment in abeyance. *See* 4 Tex.Jur.3d *Appellate Review* § 286, at 404 (1980). Further, as noted above, the judgment below is not final as a matter of federal law. Indeed, the Stone parties have only the *hope* of recovery. The third *Bradley* factor—the impact on those rights—"stems from the possibility that new and unanticipated obligations may be imposed on a party." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. No new or unanticipated obligation is imposed on the Stone parties by application of FIRREA to this case. *D'Oench* and 12 U.S.C. section 1823(e) as they existed prior to August 9, 1989, condemned oral agreements and the lack of official bank records. Clarifying that the FDIC in the event of an appealable judgment may raise the *D'Oench* issue does not alter the manner in which the parties dealt with each other years before and the lack of written official bank records. *D'Oench* is regularly and constitutionally applied in cases like the present one because of the borrower's presumed knowledge of *D'Oench* requirements and the possibility of bank failure. This principle has been rarely questioned and always confirmed. *See, e.g., Chatham Ventures, Inc. v. FDIC*, 651 F.2d 355, 362–63 (5th Cir. Unit B July 1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Thus, under the *Bradley* analysis, the retroactive application of 12 U.S.C. section 1821(d)(13)(B) is not only permissible, but required.

■ Furthermore, we conclude that the change is merely procedural, since it neither enlarges nor impairs substantive rights but relates to the means and procedures for enforcement of those rights. *See United States v. Kairys*, 782 F.2d 1374, 1381 (7th Cir.), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986);

*United States v. Blue Sea Line*, 553 F.2d 445, 448–49 (5th Cir.1977). No litigant has a vested right in a statute or rule which affects remedy or is procedural in nature. *Ex parte Abell*, 613 S.W.2d 255, 260 (Tex. 1981). FIRREA in section 212(d)(13)(B) (codified at 12 U.S.C. § 1821(d)(13)(B)) simply confirms that when a judgment remains appealable the FDIC has the rights and remedies of the old institution and FDIC in its corporate capacity. Texas appellate courts have always applied new rules of procedure or standards of appellate review in accordance with the law existing at the time of the appellate decision. *See Delta Brands, Inc. v. Borden Metal Products Co.*, 570 S.W.2d 1, 2 (Tex.Civ.App.—Beaumont), *writ ref'd n.r.e. per curiam*, 570 S.W.2d 876 (Tex.1978) (new rules relating to preservation of error applied); *Cooper v. Texas Board of Medical Examiners*, 489 S.W.2d 129, 131 (Tex.Civ.App.—El Paso 1972, writ ref'd n.r.e.), *cert. denied*, 414 U.S. 1072, 94 S.Ct. 585, 38 L.Ed.2d 478 (1973) (new substantial evidence standard of review applied). The decision in *Exxon Corp. v. Brecheen*, 519 S.W.2d 170, 183 (Tex.Civ.App.—Houston [1st Dist.]), *rev'd on other grounds*, 526 S.W.2d 519 (Tex. 1975), is particularly instructive. The *Exxon* decision reversed a decision of a trial court refusing to apply a newly enacted evidentiary rule at trial. While the Texas Supreme Court reversed the judgment of the court of appeals, it expressly approved of this holding by that court. *Brecheen*, 526 S.W.2d at 525. Therefore, we conclude that 12 U.S.C. section 1821(d)(13)(B) creates no *new* rights or remedies; it merely delineates the procedures whereby such pre-existing rights and remedies are to be enforced. Thus, the statute being merely procedural, it controls the suit from its effective date, August 9, 1989. *See Blue Sea Line*, 553 F.2d at 449–50.

Moreover, we further conclude that application of FIRREA to this case has no retroactive effect. Since we hold that the *D'Oench* and section 1823(e) defenses can

be raised at any time prior to final judgment, and no final judgment exists, the application of this statute is *prospective.*[4] A retroactive law is one which is intended to act on things that are past. *Aetna Ins. Co. v. Richardelle*, 528 S.W.2d 280, 284 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). *See also Ex parte Abell*, 613 S.W.2d at 262 (answer to interrogatory not yet given). This appeal is not past. The statute applies to any "appealable judgment," which we have in the present case. The new law is applied prospectively—that is, to decisions handed down after the new law is announced. *Noble v. Drexel, Burnham, Lambert, Inc.*, 823 F.2d 849, 850 n. 2 (5th Cir.1987). The time to which the statute spoke was either in the present or in the future and has no "retroactive" application here. Indeed, this statute is not "reaching back" to affect prior, vested rights. It is merely clarifying the appellate review of this case—such review occurring well after the effective date of FIRREA. Thus, applying FIRREA from its effective date does not alter its effect upon the present case. We conclude, therefore, that section 1821(d)(13)(B) applies in the present case even though the receivership had been established before enactment of the amending statute. For the above reasons, we hold that application of section 1821(d)(13)(B) to the present case would not be "retroactive" and improper.

### The Question of Whether the Same Defenses Available to FSLIC Are Available to the Wholly Owned Subsidiary—Service

We conclude that the same defenses available to FSLIC are available to Service to bar the Stone parties' claims. *See FDIC v. Hoover–Morris Enterprises, Inc.*, 642 F.2d 785, 787–88 (5th Cir. Unit B April 1981) (*D'Oench* applied to invalidate oral agreement between bank customers and third party mortgage company); *FDIC v. Smith*, 466 F.Supp. 843, 845 (N.D.Ga.1979)

---

4. This holding of prospectivity is further bolstered by the fact that we have already held that none of the prior deadlines (*i.e.*, motion for new trial) have any effect on the raising of these defenses since they can be raised at any time, even unto petition for writ of certiorari to the Supreme Court of the United States.

(statutory codification of *D'Oench* bars off-set claim against subsidiary of failed bank); *Aero Support Systems, Inc. v. FDIC*, 726 F.Supp. 651, 654 (N.D.Tex.1989) (*D'Oench* applies to successor in interest to failed institution). A wholly owned service corporation of a thrift, such as Service, is considered an investment of the insured institution. The institution's authority to conduct business through it arises from 12 U.S.C. section 1464(c)(4)(B) and 12 C.F.R. section 545.74. Service corporations are regulated entities because their activities directly affect the status of the insured, parent institution. 12 C.F.R. § 545.74. As affiliates of the insured institution they are subject to Bank Board examination. 12 C.F.R. § 563.17–1. *See Astrup v. Midwest Fed. Sav. Bank*, 886 F.2d 1057 (8th Cir. 1989) (The court affirmed the trial court's granting judgment n.o.v. in favor of a subsidiary of a savings and loan because the contract claims against the subsidiary were based on agreements barred by *D'Oench*.); *see also Illinois ex rel. Hartigan v. Commonwealth Mort. Corp. of America*, 723 F.Supp. 1258 (N.D.Ill.1989). Consequently, we conclude that the *D'Oench* and section 1823(e) defenses are available to Service. We reach this conclusion for these reasons. First, the Bank Board must be able to rely upon the accuracy of the records of a subsidiary as well as the parent. Second, a subsidiary may constitute a major part of the assets and the net worth of an association. We reason that if an unrecorded oral agreement could render insolvent an apparently sound subsidiary, that in turn could render the parent insolvent. Third, if *D'Oench* were inapplicable to the records of a subsidiary, borrowers could allege oral agreements with subsidiaries. The result would be the loss of the ability of the Bank Board to assess the complete financial picture of an association. Therefore, because the Bank Board examines the records of a subsidiary and must be able to rely on those records, *D'Oench* and section 1823(e) must be applied in situations involving service corporations such as Service. It follows, and we so hold, that the *D'Oench* and section 1823(e) defenses available to FSLIC are available to a wholly owned subsidiary of a failed institution. We conclude, therefore, that the same defenses available to FSLIC are available to Service.

### The Forty–Seventh Point of Error

The background issues discussed above are presented to us by the parties in arguments advanced and responded to under FSLIC and Service's point of error forty-seven. In their forty-seventh point of error, FSLIC and Service contend that *D'Oench* applies to this case even though judgment had been entered prior to the appointment of FSLIC as receiver. For the above reasons, we agree. We sustain the forty-seventh point of error of FSLIC and Service. Having determined that *D'Oench* and section 1823(e) apply in the present case, we reach the merits of FSLIC and Service's points of error pertaining to their *D'Oench* and section 1823(e) defenses. This brings us to consider matters raised in points of error forty-five and forty-six.

### The Merits of FSLIC and Service's Points of Error Pertaining to Their D'Oench and Section 1823(e) Defenses

█ In their forty-fifth point of error, FSLIC and Service contend that the appointment of FSLIC as receiver caused all evidence introduced at trial of matters extraneous to banking records to have been erroneously admitted as a matter of federal law. FSLIC and Service insist that the appointment of FSLIC caused all evidence of matters extraneous to banking records introduced by the Stone parties at trial to have been improperly admitted because of controlling federal law protective of failed federally insured institutions and the assets of the agencies that insure their deposits. Thus, FSLIC and Service argue that the Stone parties' claims fail as a matter of federal law under *D'Oench* and *Langley.*

The Stone parties' claims arose from alleged pre-receivership conduct by Savings and Service. Those claims, generally, involved breach of contract, breach of fiduciary duty, fraud, wrongful foreclosure, usury, punitive damages, and attorneys' fees. At trial, evidence extraneous to the banking records of Savings was admitted.

Thus, the question arises, even if facts giving rise to the Stone parties' claims were established, as to whether each claim must fail as a matter of law under the federal common law principles set forth in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and unanimously reaffirmed in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). In this connection, we recognize that federal common law is binding on both state and federal courts. *Basham v. Smith*, 149 Tex. 279, 284–87, 233 S.W.2d 297, 300–01 (1950); C. WRIGHT, FEDERAL COURTS § 60, at 392 (4th ed. 1983). Further, the *D'Oench* principle is consistent with Texas state law. *See Motor & Ind. Fin. Corp. v. Hughes*, 157 Tex. 276, 302 S.W.2d 386 (1957).

In *D'Oench*, the United States Supreme Court announced a rule of federal common law affording the FDIC protection from defenses typically raised by obligors in collection or deficiency suits. The essence of the *D'Oench* rule is that the FDIC is entitled to rely, to the exclusion of any extraneous matters, on the official bank records that set forth the rights and obligations of the bank and those to whom the bank lends money. This rule reflects the "federal policy to protect [the FDIC] and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans." *D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679. The purposes underlying this policy are to encourage a prudent consideration of lending practices, to assure proper recordation of banking acts to guard against collusive reconstruction of terms, and to satisfy the urgent need of banking regulators to be able to determine the face value of the remaining assets of the failed institution. *See Langley*, 484 U.S. at 95, 108 S.Ct. at 405. To effectuate that goal, courts have routinely stricken defenses that arise out of representations that are not evidenced in the official loan documents. *E.g., FSLIC v. Lafayette Inv. Prop. Inc.*, 855 F.2d 196, 197–98 (5th Cir.1988) (barring oral agreement as to non-liability); *FDIC v. Gulf Life Ins. Corp.*, 737 F.2d 1513, 1516–17 (11th Cir.1984) (barring defenses of waiver or estoppel); *FSLIC v. Ziegler*, 680 F.Supp. 235, 237 (E.D.La.1988) (barring defense of failure of consideration). The United States Court of Appeals for the Fifth Circuit has applied *D'Oench* to the FDIC in its receivership capacity. *FDIC v. McClanahan*, 795 F.2d 512, 514 n. 1 (5th Cir.1986). That court has also recently applied *D'Oench* to FSLIC in its receivership capacity. *Kroenke*, 858 F.2d at 1070 (oral agreements between debtors and banks are ineffective against the FDIC or FSLIC as receiver); *FSLIC v. Murray*, 853 F.2d 1251, 1254–55 (5th Cir.1988) (*D'Oench* and its progeny protect FDIC and FSLIC alike against [secret] arrangements; fraudulent representations and oral release defenses rejected).

As to the relationship between "defenses" and "affirmative claims," the common borrower defenses illustrated above are now typically turned into affirmative claims for relief under the general rubric of "lender liability." Cases such as the present case rely heavily on evidence showing, for example, custom and usage and alleged "side-bar" representations that are not contained in any writing, much less on the official books of the lending institutions. To the extent the Stone parties' claims are based on the same type of matters extraneous to bank records condemned by *D'Oench* and *Langley* when asserted as defenses, we conclude that the rationale of *D'Oench* and *Langley* prevents use of that type evidence to support affirmative claims. Indeed, such claims would impermissibly reduce the value of the lender's assets. We reach this conclusion in light of instructive decisions of the federal courts. The decision of the Fifth Circuit in *Black v. FDIC*, 640 F.2d 699, 701 (5th Cir. Unit B March 1981), *cert. denied*, 454 U.S. 838, 102 S.Ct. 143, 70 L.Ed.2d 119 (1981), is directly on point. In that case the court held that evidence of subjective intent of the lender and custom of the lending trade was equivalent to an oral side agreement from which the FDIC was protected. *See Beighley v. FDIC*, 868 F.2d 776, 784 n. 12 (5th Cir.1989) (claims of breach of contract,

breach of fiduciary duty, promissory estoppel, and fraud based on oral agreements barred); *Murray*, 853 F.2d at 1255 (oral agreements to fund additional loans and release liabilities barred); *Chatham Ventures, Inc.*, 651 F.2d at 359–61 (suit on oral joint venture barred; FDIC protected against "defenses or claims"). We conclude, therefore, that claims of borrowers for affirmative relief invade the exact areas that *D'Oench* and *Langley*, were designed to protect—prudent consideration of lending practices and loans, proper recordation of transactions to guard against collusive reconstruction of terms and the ability to determine the value of the assets of a failed institution. Hence, we conclude further that all of the Stone parties' claims based on evidence of matters extraneous to Savings' records fall within the protection afforded FSLIC. It follows that the trial court erred in denying FSLIC and Service's motion to vacate judgment or for new trial because the evidence led to an erroneous verdict and judgment that this Court should reverse.

 Moving from claims for affirmative relief, we next address the Stone parties' fiduciary claim. In the same manner as above, the Stone parties' contention that Savings owed it a fiduciary duty must fail as a matter of federal law. The contractual, not fiduciary, nature of the relationship between Savings and the Stone parties is evidenced by extensive written documents covering the transactions at issue. The documents explicitly disclaim any partnership relationship. For example, defendants' Exhibit 6, an assignment agreement, specifically provided:

8. *No Partnership or Guarantee.* Corporation's interest in Net Proceeds is not intended, nor shall it be deemed or construed, to create a partnership, joint venture or common interest in profits between Assignor and Corporation or to create an equity in the Property in Corporation or to make Corporation in any way responsible for the debts or losses of Assignor or with respect to the Property. Assignor and Corporation disclaim any sharing of liabilities, losses, costs or expenses.

Under *D'Oench*, the FSLIC need look only to the express terms of the official loan documents to enforce the obligations therein set forth. *Beighley*, 868 F.2d at 784. Consequently, we conclude that recovery on the claim of a fiduciary relationship varying these express terms is barred.

Again moving from claims for affirmative relief, we next address the Stone parties' fraud claim. To the extent the Stone parties' fraud claim relies on the alleged intent of Savings, the claim is barred by *D'Oench*. *See Beighley*, 868 F.2d at 784 n. 12 (fraud claim based on oral agreement barred); *In the Matter of CTS Truss, Inc.*, 868 F.2d 146, 149–50 (5th Cir.1989) (claim for equitable subordination based on fraud; bad faith barred); *Templin v. Weisgram*, 867 F.2d 240, 241–42 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989) (injunction to prevent foreclosure based upon misrepresentation barred); *Black*, 640 F.2d at 701–02 (subjective intent evidence barred). In its recent opinion in *Langley*, the Supreme Court greatly narrowed the situations in which fraud defenses are available to estop the FDIC from enforcing a valid obligation. The Court made it clear that allegations short of fraud in the factum are not relevant in considering whether a note is due and payable. *See Langley*, 484 U.S. at 93–94, 108 S.Ct. at 403–04. In the present case, we conclude that the Stone parties' claims of fraud are simply a form of fraud in the inducement, just as in *Langley*. In the present case, the Stone parties appear to contend that Savings entered into agreements that it never intended to perform. On its face, evidence of such intention or scheme involves matters extraneous to the lender's records. This type of evidence was expressly rejected by the Supreme Court in *Langley*, where only fraud in the inducement was alleged. Therefore, we conclude that the Stone parties' fraud claims are barred by *D'Oench* and *Langley*.

For the above reasons, we hold that the appointment of FSLIC as receiver caused all evidence introduced at trial of matters extraneous to banking records to have been

erroneously admitted as a matter of federal law. We sustain the forty-fifth point of error of FSLIC and Service.

■ In their forty-sixth point of error, FSLIC and Service contend that they are not subject to awards for usury, punitive damages or attorney's fees as a matter of federal law. FSLIC and Service argue that the Stone parties' usury, punitive damages and attorney's fees claims are barred as a matter of federal law for much the same reasons as above discussed. We agree. Other courts, while not relying specifically on *D'Oench*, have drawn on the same policy reasons articulated in *D'Oench* to fashion a federal common law rule granting a receiver immunity from usury and punitive damages claims. *See FDIC v. Tito Castro Constr., Inc.,* 548 F.Supp. 1224, 1226 (D.P. R.1982), *aff'd on other grounds,* 741 F.2d 475 (1st Cir.1984) ("[a]s a matter of federal law, the FDIC in its corporate capacity is not subject to a state usury claim"); *Professional Asset Management, Inc. v. Penn Square Bank, N.A.,* 566 F.Supp. 134, 136 (W.D.Okla.1983) ("to award punitive damages against the receiver [FDIC] would be contrary to the theory underlying such awards and would be manifestly unjust"). We conclude that the application of *D'Oench* and principles of federal common law to bar a debtor's assertion of usury or punitive damages claims serves sound policy goals. As the Sixth Circuit in *Anderson v. Hershey,* 127 F.2d 884, 887 (6th Cir. 1942), explained in a case dealing with the National Bank Act:

A national bank during normal operation could pay the amount of [the usury] penalty from its profits so that its creditors and depositors would not suffer. But when the bank is in receivership any depletion of the estate ... will affect creditors and depositors who were in no way connected with or responsible for the usurious transaction. The purpose of the punitive double recovery provision, which is to prevent repetition of the offense, does not exist when the bank is in process of liquidation and its activities are being progressively curtailed.

*See also Summers v. FDIC,* 592 F.Supp. 1240, 1243 (W.D.Okla.1984) (treble damages may not be imposed on the FDIC). Nevertheless, the Stone parties argue that the real defense of usury prohibits FSLIC from relying on *D'Oench* defenses. The Stone parties reason that under the trial court's judgment Service committed double usury under the construction loan and nullified the loan under article 5069–1.06 of the Texas Revised Civil Statutes, thus rendering it worthless. The Stone parties insist that the construction loan, therefore, was not an asset which FSLIC could purchase, and its value could not be diminished. Thus, the Stone parties maintain that even if FSLIC still owned the loans, it could not rely on the *D'Oench* defenses to enforce them. We disagree with the Stone parties' reasoning. Given the focus of section 1823(e), it is the manner in which an instrument is proven to be void, not the conclusion that the instrument is void, that determines whether it is within the statute. *Templin,* 867 F.2d at 242. In the present case, the trial court drew a conclusion rendering the loan worthless without regard to the *D'Oench* defenses. We conclude, therefore, that the usury and punitive damage claims are unavailable to the Stone parties as a matter of federal law.

Next, we consider the award of attorney's fees to the Stone parties. Where recovery of attorney's fees is not specified in the parties' contract or where there is no collateral fund from which they can be recovered, a claim for attorney's fees cannot be asserted against the assets of a failed bank. *InterFirst Bank Abilene, N.A. v. FDIC,* 777 F.2d 1092, 1097 (5th Cir.1985). The award of attorney's fees in the present case meets none of those criteria. We conclude, therefore, that any award of attorney's fees to the Stone parties is precluded under federal common law.

For the above reasons, we hold that to the extent the judgment relieves the Stone parties of liability on allegedly usurious transactions and awards affirmative recovery for usury, punitive damages, and attorney's fees, it is erroneous as a matter of

federal law. We sustain the forty-sixth point of error of FSLIC and Service.

### The Stone Parties' Breach of Contract Claims and the D'Oench Defenses

■ The Stone parties insist that the D'Oench defenses do not apply to their breach of contract claims against the failed institution and its subsidiary. The Stone parties argue that, at most, D'Oench defenses prevent borrowers from relying on "secret agreements" to avoid repaying obligations held by FSLIC. Hence, the Stone parties reason that because their breach of contract claims have nothing to do with secret agreements, the D'Oench defenses are not applicable. The Stone parties point out that on their face, the agreements in the present case imposed bilateral obligations on the parties, rather than creating unilateral obligations on the Stone parties to pay sums certain. The Stone parties assert that they proved that Savings and Service breached the written agreements. The Stone parties argue that analysis of each of these claims show that they do not fall under D'Oench:

(a) The Partnership's claim for Savings' failure to issue letters of credit is not a defense to an obligation to pay money, but rather constitutes an affirmative claim for Savings' failure to honor a promise clearly set forth in the construction loan;

(b) The Partnership did not rely on Service's refusal to fund the construction loan to avoid repaying the loan; rather, it asserted an affirmative claim for Service's failure to honor a promise in the construction loan;

(c) The Partnership's proof that Service breached the land loan by not funding it was simply an affirmative contract claim based on Service's refusal to abide by the land loan's terms;

(d) Service's breach of the management rights agreement had nothing to do with defending an obligation to repay a loan, but was simply an affirmative claim for $2 million which Service promised to pay in a written contract; and

(e) The Partnership's Phase II claim was simply that Service breached a written contract to buy property.

We conclude that FSLIC attempts to prevent the Stone parties from relying on the provisions of the very written agreements under which FSLIC seeks recovery. We conclude that such an attempt must fail. See, e.g. FDIC v. Panelfab Puerto Rico, Inc., 739 F.2d 26, 30 (1st Cir.1984) (FDIC cannot use D'Oench doctrine to invalidate a provision of the agreement under which it sues for payment); Riverside Park Realty Co. v. FDIC, 465 F.Supp. 305, 313 (M.D. Tenn.1978). For the above reasons, we hold that in the present case the D'Oench federal law defenses do not apply to the breach of contract claims of the Stone parties asserted against Savings and Service. Indeed, FSLIC and Service do not appear to argue otherwise. This then brings us to the question of the disposition we make of this appeal.

### Our Disposition of This Appeal

■ We have sustained the forty-fifth, forty-sixth and forty-seventh points of error of FSLIC and Service. Accordingly, we reverse the trial court's judgment. For the reasons that follow, we conclude that we must remand for a new trial. As to each of the Stone parties' four major breach of contract claims—the construction loan, the land loan, the Phase II purchase, and the management agreement—the Stone parties also alleged, among others, theories of breach of fiduciary duty, fraud, and wrongful foreclosure. The jury awarded damages as shown above on each theory. The same evidence of this alleged "fraudulent scheme," barred by D'Oench, underlies each theory. FSLIC and Service argue that testimony supportive of the breach of fiduciary duty, fraud, and wrongful foreclosure claims but barred by D'Oench so permeated the entire case that the jury could not have viewed objectively evidence pertaining to the breach of contract claims. Hence, FSLIC and Service insist that the jury decided the case on an emotional basis; as a result of aroused passions and sympathies. See Turner v. PV Int'l Corp., 765

**494**

S.W.2d 455, 471–72 (Tex.App.—Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex.1989). By virtue of the hindsight afforded by the applicable federal law defenses, we agree. Texas Rule of Civil Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

"Unfair prejudice" refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Turner*, 765 S.W.2d at 471 (quoting from FED.R.EVID. 403 advisory committee note). Given our holding that the federal law defenses are available to FSLIC post-trial court judgment, we conclude that background evidence, which the jury should not have heard by virtue of FSLIC federal law defenses, of other charged wrongful conduct such as breach of fiduciary duty, fraud and wrongful foreclosure provided unfair prejudice—an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. We conclude further, therefore, that because *D'Oench* would bar evidence of all claims not embodied in official bank records, the evidence admitted in violation of *D'Oench* was reasonably calculated to and did cause the rendition of an improper judgment. TEX.R. APP.P. 81(b)(1). Consequently, we remand for a new trial. In view of our disposition of this appeal, we do not reach:

(1) the remaining points of error advanced by FSLIC and Service;

(2) the cross-point of the Stone parties; and

(3) the three appeal points asserted by the Stone parties.

Reversed and remanded.