**Max LARSEN, Trustee, Petitioner,**

v.

**FDIC/MANAGER FUND, as Successor in Interest of American Savings Bank, Respondent.**

**No. D–0180.**

Supreme Court of Texas.

June 10, 1992.

---

---

Mark H. How and Carcia F. Pennell, Dallas, for petitioner.

Michael Byrd, W. Ralph Canada, Jr., Panos Midis, Dallas and John Parker, Washington, D.C., for respondent.

OPINION

GAMMAGE, Justice.

The issue in this case is one of statutory construction: whether Congress intended a section in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989[1] ("FIRREA") to give the FDIC power to step in after judgment as receiver for a failed financial institution and assert substantive federal defenses for the first time on appeal. The trial court rendered judgment for Max Larsen, trustee, against American Savings Bank. American Savings appealed, but while the case was on appeal, federal regulators declared the bank in danger of insolvency and ultimately the FDIC was substituted as a type of "receiver" for the asset at issue. The court of appeals held the statutory amendment required it to consider the so-called

---

1. Pub.L. No. 101–73, 103 Stat. 183 (1989).

"*D'Oench, Duhme*[2] defenses" the FDIC asserted for the first time on appeal, noting that its holding was "in disagreement with the decisions of several federal circuit courts." 793 S.W.2d 37, 41. The court of appeals reversed and rendered judgment for the FDIC on those grounds. We conclude that the federal courts have correctly construed the federal statute not to create such sweeping new substantive rights, and accordingly reverse the judgment of the court of appeals and remand the cause to that court to address the other issues in the appeal.

This case involves the facts as tried by the trial court, the facts involved in the federal regulatory intervention in the court of appeals, and the statutory facts raising the issue of federal law and preemption which this court is compelled to decide. We briefly give an overview of each set of facts.

The Larsen Trust sold a tract of land for development as a condominium project, retaining a vendor's lien to secure payment of a $400,000 note which was part of the consideration given for the purchase. As part of a refinancing transaction for the construction project, the developer and new mortgage company persuaded Larsen to release a claim and subordinate his vendor's lien to the deed of trust lien securing the new construction loan. Larsen as trustee subsequently sued the project developer and its mortgage corporation, which was not federally insured, for fraudulently inducing him to sign the release and subordination agreements.

The mortgage corporation had assigned the note payable to it, and deed of trust securing payment of the note, to federally-insured American Savings Bank, which intervened in the suit. Primarily on agency and alter ego theories, Larsen asserted liability against American Savings as well. Trial was to a jury, which found all issues in favor of Larsen. The trial court rendered judgment in November 1987 on the jury verdict for Larsen against the developer and American Savings, but not against the mortgage corporation because it had filed for bankruptcy. American Savings perfected an appeal of the judgment against it. American Savings posted the cost bond to perfect the appeal. Near the beginning of the suit, to bond around a *lis pendens* notice Larsen filed on the property, American Savings had deposited in the registry of court a substantial cash amount. The trial court judgment provided that $510,005.44 of the cash already deposited would serve as the supersedeas bond for the appeal, with the excess on deposit refunded to American Savings.

After American Savings appealed, the Federal Home Loan Bank Board approved the supervisory merger of American Savings into Citizens Federal Bank, because American Savings was in danger of insolvency. The supervised-merger plan provided that the Federal Savings and Loan Insurance Corporation (FSLIC), in its corporate capacity, would assume certain liabilities and purchase certain assets of American Savings, including the note that was the subject of Larsen's suit. FSLIC in that capacity instructed Citizens Federal to take no further action in the appeal since FSLIC was the owner and holder of the note.

On FSLIC's motion, the court of appeals substituted FSLIC as appellant in June of 1989. The court of appeals further granted FSLIC leave to file an amended brief raising for the first time the federal common-law defenses. FSLIC asserted that the *D'Oench, Duhme* federal defenses and their statutory codification[3] prohibited Lar-

---

**2.** *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

**3.** 12 U.S.C. § 1823(e) provides:

(e) Agreements against interests of Corporation

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor contemporaneously with the acquisition of the asset by the depository institution,

sen from asserting his claims of fraud and misrepresentation to rescind or vary the written terms of the release and subordination agreement he signed.

During the period when the case was pending in the court of appeals, Congress enacted FIRREA, which became effective in August of 1989. FIRREA abolished FSLIC and transferred its assets to the FSLIC Resolution Fund. FIRREA further provided that the FDIC be manager of the Resolution Fund.

The court of appeals substituted the FDIC in its fund manager capacity[4] as appellant. The court allowed the FDIC to further amend the briefs to assert provisions in FIRREA itself. Specifically, FDIC argued that FIRREA's provisions[5] amending 12 U.S.C. § 1821(d)(13)(B) allowed it to assert the *D'Oench, Duhme*-type defenses for the first time on appeal. The court of appeals sustained this contention and further rendered judgment for the FDIC, holding that as a matter of law Larsen's claims were barred by the federal substantive defenses.

The federal *D'Oench, Duhme*-type defenses are unique to federal corporate entities such as the FDIC, which insure deposits in financial institutions, and generally allow the federal entity to rely on the face of the financial institutions' records in valuing assets. In particular, as to the federal entity, agreements between borrowers and financial institutions that are not expressed in the written agreements between those parties are not enforceable.[6] One obvious purpose (but not the exclusive one) is to protect the insuring fund when the federal corporate entity replaces a failed financial institution. Construction and application of the *D'Oench, Duhme*-type defenses obviously involve questions of federal law.

The court of appeals cited no federal case agreeing with its analysis. Further, the court of appeals acknowledged its decision was contrary to *Grubb v. FDIC*, 868 F.2d 1151 (10th Cir.1989); *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266 (5th Cir.1989); and *Thurman v. FDIC*, 889 F.2d 1441.(5th Cir.1989). The court of appeals chose to follow its prior decision in

---

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(4) has been, continuously, from the time of its execution, an official record of the depository institution.
The federal courts have regarded these statutory provisions as codifications of the *D'Oench, Duhme* doctrine to the extent that they discuss the common law doctrine and the provisions together. *See e.g., Langley v. FDIC*, 484 U.S. 86, 90–93, 108 S.Ct. 396, 400–402, 98 L.Ed.2d 340 (1987); *Kilpatrick v. Riddle*, 907 F.2d 1523, 1526 n. 4 (5th Cir.1990); *FDIC v. McCullough*, 911 F.2d 593, 598 n. 4 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991).

4. Since the note to which Larsen's release and subordination agreement related was transferred to FSLIC as an asset of an institution in danger of insolvency, it would appear that the FDIC controlled the note in its *corporate* capacity. *See, e.g., Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 380–81 (5th Cir.1990); *Bell & Murphy and Assoc., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 754 (5th Cir.1990); *see also RTC v. Murray*, 935 F.2d 89, 91–92 (5th Cir.1991). The note and related documents then became part of the FSLIC Resolution Fund, of which the FDIC is the "manager." The FDIC thus became a type of receiver or conservator for assets owned by

FSLIC Corporate. Because our disposition is independent of the characterization, we need not speculate whether FDIC's "manager/Fund" capacity is "corporate" or as "receiver or conservator."

5. As amended by FIRREA, 12 U.S.C. § 1821(d)(13) now provides (with the "Corporation" referring to the FDIC):

**(d)(13) Additional Rights and Duties**
**(A) Prior Final Adjudication**—The Corporation shall abide any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the Corporation as conservator or receiver.
**(B) Rights and Remedies of Conservator or Receiver—In the event of any appealable judgment,** the Corporation as conservator or receiver shall—
(i) have all the rights and remedies available to the insured depository institution (before appointment of such conservator or receiver) and the Corporation in its corporate capacity, including removal to Federal court and all appellate rights; and
(ii) not be required to post any bond in order to pursue such remedies.

6. *See, e.g., FDIC v. Virginia Crossings Partnership*, 909 F.2d 306, 309–10 (8th Cir.1990); *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1104–1109 (11th Cir.1990).

*FSLIC v. Stone*, 787 S.W.2d 475 (Tex. App.—Dallas 1990, writ dism'd by agr.). We originally granted writ of error in *Stone* and heard argument (consolidated with the present case) in it, but a post-submission settlement has disposed of *Stone*. We therefore must contrast the reasoning of the *Stone* decision with that of *Grubb, Olney, Thurman,* and other subsequent federal decisions. We begin our analysis with *Grubb*.

*Grubb* was decided before Congress enacted FIRREA. After trial on the merits, the federal district court rendered judgment for securities fraud against a federally-insured bank. After it perfected appeal, the bank was declared insolvent. The FDIC was appointed receiver and substituted as appellant. While the case was on appeal, the Supreme Court decided *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), holding that misrepresentation inducing the loan transaction was an "agreement" within the meaning of the section 1823(e) and thus barred by the *D'Oench, Duhme* doctrine because it amounted to an express warranty or oral representation constituting a condition on payment of the note. The *Grubb* decision distinguished *Langley* because the notes had already been "voided" by the judgment when they were transferred to the FDIC first as receiver and then in its corporate capacity:

> *Langley* does not apply because of significant procedural and factual differences between it and the present case. * * * Unlike the notes in *Langley*, which were merely voidable when the FDIC acquired them, these notes already had been *voided* by the judgment when the FDIC purchased First National's assets. Therefore, the FDIC acquired no "right, title or interest" in the Grubb and Weatherford Holding notes that the fraud claims could "diminish or defeat," and section 1823(e) does not bar those claims and defenses. *See Langley,* 108 S.Ct. at 402–03 (defense that renders instrument entirely void, as opposed to merely voidable, takes instrument out of protection of section 1823(e)); *FDIC v. Merchants Nat'l Bank,* 725 F.2d 634, 639

(11th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984) (section 1823(e) does not apply when "the parties contend that no asset exists or an asset is invalid *and* that such invalidity is caused by acts independent of any understanding or side agreement"); *FDIC v. Prann,* 694 F.Supp. 1027, 1037 (D.P.R. 1988) (section 1823(e) inapplicable when debt that formed basis of asset claimed by FDIC was satisfied before FDIC acquired failed bank's assets); *FDIC v. Nemecek,* 641 F.Supp. 740, 742–43 (D.Kan.1986) (settlement of bank's suit against obligor cancelled note before FDIC acquired it, making section 1823(e) inapplicable).

> *Grubb,* 868 F.2d at 1158–59 (emphasis in original).

The court further explained that because the judgment already existed when the FDIC purchased the assets, the purposes of section 1823 were not offended because the judgment was "a reliable record that the notes were void, and collusion between Grubb and First National seems highly unlikely because the parties had fully and heatedly litigated the securities fraud issue to judgment before the bank failed." *Id.* at 1159. Thus, the *Grubb* decision emphasized that when the transfer of assets occurred (i.e., after judgment voiding the notes and while the case was on appeal), the note was not an asset because the judgment had already voided it.

*Olney* was the next opinion chronologically. Olney Savings had sued Trinity Savings and its related mortgage company for fraudulently inducing Olney to participate in loans financing purchases of townhouses. The federal district court rendered judgment on the jury verdict for the fraud. The defendant savings association and its mortgage company posted a supersedeas bond and perfected their appeal. While the case was on appeal, they were declared insolvent and the FSLIC appointed conservator. FSLIC contended that the very provision of FIRREA at issue in this case—amended 12 U.S.C. § 1821(d)(13)(B)—granted it the right to assert section 1823(e) for the first time on appeal. The appellate

court rejected this argument, explaining that the amendment was a standing provision:

> FSLIC argues that this new provision allows conservators to raise § 1823(e) on appeal for the first time, after the entry of a final judgment to which they were not a party. We read the same section, and find that it means that conservators and receivers are given standing to pursue all appeals, where before its enactment only FDIC acting in its corporate capacity could pursue certain claims. This section gives FSLIC no new substantive rights in this appeal.

*Olney*, 885 F.2d at 275.

The court also followed *Grubb* by holding that the supersedeas bonds posted by the financial institutions "ceased to be assets of Trinity or STM" and thus were not assets transferred to FSLIC's control as receiver. *Id.* at 274. The Fifth Circuit further followed *Grubb* by holding that since the participation agreement had been voided by entry of the judgment for rescission, the FSLIC did not acquire a "right, title or interest" that could be defeated by the misrepresentations within the meaning of section 1823(e). *Id.* at 275.

*Thurman*, the third federal case, was decided shortly after *Olney*. In *Thurman*, a federally-insured institution had sued in a Texas state district court to collect notes and foreclose on real property securing the indebtedness. Defendants counterclaimed for fraud and usury. After a jury trial produced a verdict favorable to defendants, the state trial judge rendered a substantial money judgment (including punitive damages) against the institution. Five days later the Federal Home Loan Bank Board (FHLBB) appointed FSLIC as receiver for the financial institution. With the express approval of the FHLBB, FSLIC Receiver transferred substantially all the assets of the failed savings institution to a newly created federal savings institution. FSLIC Receiver then removed the case to federal district court. The new federal savings institution then transferred the notes at issue in the suit to FSLIC in its corporate capacity, and FSLIC Corporate sought to intervene to assert the *D'Oench, Duhme* defenses for the first time through a motion for new trial or in arrest of judgment. Although the opinion mentions FIRREA, it neither expressly discusses nor suggests that FSLIC Corporate (replaced by FDIC Corporate after FIRREA's enactment) asserted FIRREA § 212, codified as 12 U.S.C. § 1821(d)(13)(B). It appears that FSLIC Corporate relied upon *FDIC v. Castle*, 781 F.2d 1101 (5th Cir.1986), to assert that it could raise the issues for the first time as a post-judgment intervenor in a motion for relief from judgment.

Relying in part on *Grubb*, the Fifth Circuit drew two distinctions favoring not disturbing the finality of the judgment under the circumstances presented. First, the FSLIC Corporate had not been a party at trial, so the *D'Oench, Duhme* defenses had not existed at the time of the actual trial, unlike the situation in *Castle*. *Thurman*, 889 F.2d at 1447. Second, addressing the timing of appointment of a receiver and transfer of assets, the court stated its "approach creates a disincentive to gamble on a verdict while holding a *D'Oench, Duhme* trump card." *Id.* Because it is addressed in subsequent federal opinions, we quote the *Thurman* discussion verbatim in the margin.[7]

---

7. *Thurman*, 889 F.2d at 1447, states:

> In support of its right to assert new defenses FSLIC Corporate relies on *Castle*. However, in *Castle* FDIC Corporate was a party when the case was tried. FSLIC Corporate was not. In *Castle* we concluded in a close case that substantial interests in finality were outweighed by the equity of obtaining a just result. While a just result inquiry arguably begs the question of new defenses versus finality, we allowed FDIC Corporate to assert its clearly applicable *D'Oench, Duhme* defense so that the judgment might reflect the "true merits" of the case. However, even assuming a similar role for *D'Oench, Duhme* in this case, we are persuaded of a different outcome. Where the party asserting the new defense is a post-judgment intervenor, and the newly proffered defense would not have changed the outcome of the case as it was tried, there is little to justify the upset of the judgment. In this weighing of interests we do no violence to the policies behind *D'Oench, Duhme*. The parties to the suit at trial were the parties to the transaction. The difficulties attending a receiver's finding that notes in the

The next federal appellate court decision touching the issue was pronounced after we had granted writ in this case. In *Union Federal Bank v. Minyard*, 919 F.2d 335 (5th Cir.1990), joint venturers had guaranteed payment of a real estate purchase money note, then sought to defend the bank's suit for collection on the ground that usury had been charged or collected against them, although the loan documents themselves did not specify such usurious rates. The trial court had found against the venturers. After judgment, the bank was declared insolvent and first the FSLIC and later the FDIC was appointed receiver and substituted as counter-defendant. FSLIC removed the case to federal court while the venturers' motion for new trial was pending. The federal district court overruled the pending motion for new trial and essentially re-entered the state court judgment as its own.

The venturers appealed, and the FDIC asserted its *D'Oench, Duhme* defenses as grounds for affirming the trial court judgment in its favor. Without mentioning *Thurman*, and citing *Castle*, the per curiam opinion states, "As the FDIC had neither opportunity nor occasion to assert the D'Oench doctrine in the trial court, we will entertain its assertion here." *Minyard*, 919 F.2d at 336. The court further wrote that "[v]arious other reasons support the judgments of the trial court; but as those recited [*D'Oench* ] suffice to do so, we write no further." *Id.*

The fact that the financial institution prevailed at the trial court is the main distinction of *Minyard*. The FDIC concedes such in its brief citing the case. In *Minyard* the appealing venturers apparently sought a remand, since the trial court found the

facts against them. On remand, the FDIC would have been a party to the actual trial and could have asserted its *D'Oench, Duhme*-type defenses. It would have prevailed as a matter of law, and there was no reason to remand the case. Under this analysis the distinction drawn in *Thurman*, that FDIC Corporate was not a party to the actual trial, would still be viable.

The Fifth Circuit has subsequently reaffirmed its holding in *Thurman*, citing it for the proposition that *D'Oench* defenses not enjoyed by the actual defendant at the time of trial may not be asserted for the first time on appeal. *See First Interstate Bank v. First National Bank*, 928 F.2d 153, 156 (5th Cir.1991). The opinion made no mention of the contrary holdings of *Stone* and *Larsen*, although district courts within the Fifth Circuit have expressly criticized the decisions.[8]

The Eleventh Circuit has now also expressly rejected the FDIC's argument accepted in *Stone* and *Larsen*, although the court's analysis differs somewhat from, or perhaps further elaborates upon, the Fifth Circuit's. In *Baumann v. Savers Federal Sav. & Loan Ass'n*, 934 F.2d 1506 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992), the court addressed whether to allow the Resolution Trust Corporation (RTC), acting under the same statutory framework, to assert *D'Oench, Duhme*-type defenses for the first time on appeal. The court addressed the RTC's argument that 12 U.S.C. § 1821(d)(13) required the appellate court to consider the new substantive federal defenses for the first time on appeal. A Florida state trial court had rendered judgment for Baumann upon a jury verdict.

case are subject to unrecorded agreements were absent. *See Grubb v. Federal Deposit Ins. Corp.*, 868 F.2d 1151, 1159 (10th Cir.1989). Nor are we unmindful that our approach creates a disincentive to gamble on a verdict while holding a *D'Oench, Duhme* trump card. Despite the curious timing of events we do not rest our ruling on a view that in this case the FSLIC so timed its move, because, in any event, refusing the new and unique defense works no unjust result here. It is true that FSLIC Corporate was more diligent in assert-

ing its federal defenses than was FDIC Corporate, but the fact remains that when final judgment was rendered below, five days before the receivership was created, no party to the case could have asserted these defenses. Accordingly, we affirm the district court's refusal to allow FSLIC Corporate to intervene to assert its new and unique defenses.

8. *See, e.g., First RepublicBank Fort Worth, N.A. v. Norglass, Inc.*, 751 F.Supp. 1224, 1232 n. 5 (N.D.Tex.1990) (*Larsen* and *Stone* "For the most part ... devoid of sound reasoning.")

The financial institution had then been declared insolvent and the RTC as receiver was substituted as party defendant, while the judgment was still appealable. The court rejected the RTC's argument it had the *statutory right* to assert the defenses for the first time on appeal, expressly rejecting *Stone* and *Larsen*, based on the statutory language:

> We agree with the *Olney* court that the statute does not give RTC in its capacity as conservator or receiver new substantive rights. RTC's reading of the statute would not only give RTC as conservator or receiver "all the rights and remedies" of RTC "in its corporate capacity," but would actually give RTC *greater* powers as conservator or receiver than in its corporate capacity. This is because neither FIRREA nor prior existing statutes grant RTC in its corporate capacity the power to raise arguments for the first time on appeal. Section 1821, which applies only to RTC acting as conservator or receiver, therefore, cannot grant this right merely by granting all the rights and remedies of RTC in its corporate capacity.

*Baumann,* 934 F.2d at 1511.

The court went further to explain that *Thurman* had not addressed the statute because *Thurman* dealt with an appeal by FSLIC (FDIC) in its *corporate* capacity, not its receiver or conservator capacity. *Id.* at 1512. Since section 1821(d) is entitled "Powers and duties of Corporation as *conservator or receiver,*" it did not apply in *Thurman. Id.* But *Thurman* correctly determined that FSLIC (FDIC) in its *corporate* capacity did not have a statutory absolute right to have *D'Oench, Duhme*-type defenses considered on appeal for the first time. *Id.* The court further elaborated:

> Having examined the circumstances of *Thurman,* it now can be seen that RTC's argument in this case falls of its own weight. RTC claims that section 1821(d)(13)(B) was intended to give RTC "all the rights and remedies" of RTC

acting in its corporate capacity, including its right to argue *D'Oench.* Yet the right at issue in this case is not the right of RTC to argue *D'Oench,* which is unquestioned, but rather the right of RTC to raise an argument for the first time on appeal. If RTC were acting in its corporate capacity, as it was in *Thurman,* it would have no statutory basis to claim that it was entitled to raise issues for the first time on appeal. To allow RTC acting as conservator or receiver to do so based on the "all the rights and remedies" language of section 1821(d)(13)(B) would be to grant *more* power than would be available to RTC in its corporate capacity. Yet the statute specifically grants only those rights and remedies available to the RTC "in its corporate capacity." Thus, any right of RTC to raise *D'Oench* for the first time on appeal does not come from section 1821. *Id.*

The court went further to explain that as a matter of federal appellate court discretion, under appropriate standards set by its precedents, it could allow the RTC Corporate (and thus as receiver or conservator) to assert an argument for the first time on appeal. *Id.* at 1514. It further explained the Fifth Circuit's *Minyard* opinion as the exercise of just such discretion. *Id.*

The FDIC has cited a number of federal district court memorandum opinions, some unpublished and some to be published, which it asserts are contrary to the results in *Olney* and *Thurman* in one manner or another. Such decisions have the added dimension of original trial court discretion in granting a motion for new trial or motion in arrest of judgment under federal procedure. Disregarding that dimension, however, we still can reconcile all the federal decisions under the *Baumann* court's analysis. Section 1821 does not give FDIC Receiver new substantive rights on appeal. Allowing it to assert *D'Oench* for the first time post-judgment or on appeal is strictly a matter of discretion [9] in the federal

---

**9.** Federal appellate courts follow established principles in determining whether to exercise their discretion to consider an issue not raised

in the trial court. *See, e.g., Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360–61 (11th Cir.1984) (applied in *Baumann,* 934 F.2d

courts, according to federal civil procedure, with the standards adopted by the federal cases.

By post-submission brief, the FDIC urges that the Fifth Circuit has now retreated from *Olney* and *Thurman,* and disagreed with *Baumann.* The FDIC cites *FDIC v. Meyerland Co. (In re Meyerland Co.),* 960 F.2d 512 (5th Cir.1992), but does not cite the primary case cited by *Meyerland, RTC v. McCrory,* 951 F.2d 68 (5th Cir.1992). To address the FDIC's argument, we discuss both *Meyerland* and *McCrory.*

The holding in *Meyerland* does not address section 212 of FIRREA, which is involved in this cause. Rather, *Meyerland* addressed a different provision in FIRREA dealing with the right to remove cases to federal court. *Meyerland* was a rehearing en banc in which the twelve judges of the circuit divided seven to five, with the majority concluding that FIRREA granted the FDIC the right to remove a case from state court to federal district court even if the cause were already on appeal. *Meyerland,* 960 F.2d at 521.

The FDIC does not rely on the *Meyerland* holding, but rather cites language that "FIRREA increases the FDIC's post-judgment powers" by "permit[ting] federal regulators to assert their special defenses for the first time on appeal." *Meyerland,* 960 F.2d at 519. This disagreement with *Baumann* is alleged to come from a "but see" citation to it. *Meyerland* cites *McCrory,* and the full text [10] demonstrates that *Meyerland* refers not just to *McCrory* but also to *Minyard* and *Castle.* The reference to *Castle* is particularly difficult to reconcile with any "powers" conferred by FIRREA since it was decided years before Congress enacted FIRREA. Examining the *McCrory* decision is thus necessary to interpret this dicta from *Meyerland.*

The issue in *McCrory* was whether the RTC would be allowed to raise 12 U.S.C. § 1823(e) as an alternative ground for affirming a judgment in its favor, where the *D'Oench, Duhme* common law defenses had been asserted in the trial court. The *McCrory* opinion does not repudiate *Thurman* and *Olney;* in fact, it embraces both of those decisions and further cites *Baumann* as being in accord with the Fifth Circuit's approach. *McCrory,* 951 F.2d at 71. The *McCrory* opinion emphasizes the importance of which party prevailed in the trial court judgment.[11] *McCrory* and the language in *Meyerland* are both best inter-

at 1512); *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401–402 (5th Cir.1981) (applied in *FDIC v. Castle,* 781 F.2d at 1104–1106).

**10.** We recently recognized an important way FIRREA increases the FDIC's post-judgment powers in *RTC v. McCrory,* 951 F.2d 68, 71 (5th Cir.1992). In that case, we held that FIRREA permitted federal regulators to assert their special defenses for the first time on appeal. See also *Union Federal Bank v. Minyard,* 919 F.2d 335, 336 (5th Cir.1990) (FDIC allowed to raise special defense for first time on appeal because, as the Corporation was not a party in the trial court, it had neither the occasion nor opportunity to raise it below); *FDIC v. Castle,* 781 F.2d 1101, 1106 (5th Cir. 1986) (FDIC allowed to first raise defenses on appeal because of applicability of defenses clear under relevant statute). Generally, arguments not asserted until an action reaches an appellate level are lost. See, e.g., *Hulsey v. State of Texas,* 929 F.2d 168, 170 (5th Cir. 1991), and cases cited therein. FIRREA confers a powerful litigation weapon by making such usually untimely arguments available to the FDIC. But see *Baumann v. Savers Federal Savings & Loan Assoc.,* 934 F.2d 1506, 1511 (11th Cir.1991), petition for cert. filed, (U.S. January 6, 1992) (holding that FIRREA does not allow Resolution Trust Corporation to raise issues on appeal which were not raised below).

*Meyerland,* 960 F.2d at 519.

**11.** *McCrory,* 951 F.2d at 71:

RTC raises this argument for the first time on appeal, as it was not a party to the proceedings in the district court and the argument based on § 1823(e) was not available to Sunbelt. *See FSLIC v. Griffin,* 935 F.2d 691, 698 (5th Cir.1991), *petition for cert. filed* (Nov. 18, 1991); *Bell & Murphy & Assoc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 753 (5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). In this case, RTC invokes the argument as an alternative justification for affirmance of the district court's judgment; RTC does not ask us to reverse the district court on the basis of an argument not presented to that court.

We note that, when the district court's judgment establishes that an asset is void, federal regulators appointed after the entry of judgment have not been allowed to assert arguments based on *D'Oench, Duhme* and

preted in light of the *Baumann* analysis. FIRREA may offer an opportunity for the FDIC (or RTC) to present an argument for the first time on appeal because it never had power in the first instance before; however, if the judgment was against the financial institution and resulted in the voiding of the asset, as here for fraud, then it may not assert such defense to set aside the judgment voiding the asset.

The federal appellate decisions are all in agreement: section 1821 does not give the FDIC the absolute new substantive right to assert *D'Oench, Duhme*-type federal defenses for the first time on appeal. Under Texas procedure, absent "fundamental error" not in issue in this appeal, a court of appeals has no discretion to reverse an error-free judgment [12] based on a new argument ("unassigned error" in the trial court) raised for the first time on appeal. *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982); *McCauley v. Consolidated Underwriters*, 157 Tex. 475, 477–78, 304 S.W.2d 265, 266 (1957); TEX. CONST. art. V, § 6. The court of appeals erred in holding that the FDIC had the right to assert *D'Oench, Duhme*-type defenses for the first time on appeal under 12 U.S.C. § 1821. We reverse the judgment of the court of appeals and remand the cause for it to address the properly assigned points of error, and for further proceedings consistent with this opinion.

DOGGETT, J., not sitting.

---

§ 1823(e) for the first time on appeal as an attempt to reverse the district court's judgment. *See Thurman v. FDIC*, 889 F.2d 1441, 1447 (5th Cir.1989); *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 275 (5th Cir.1989). [Footnote omitted.] In this case, however, the final judgment in favor of Sunbelt represented an asset of Sunbelt which RTC acquired when it stepped in as conservator of Sunbelt Federal. In such a situation, we have permitted federal regulators to assert their special defenses for the first time on appeal. *See Union Fed. Bank v. Minyard*, 919 F.2d 335, 336 (5th Cir.1990); *see also Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1512 (11th Cir.1991); *FDIC v. Cas-*

---

*tle*, 781 F.2d 1101 (5th Cir.1986). In *Minyard*, we emphasized that the federal regulator had no opportunity to raise its special defense in the trial court, and implied that it should not be penalized on appeal for that lack of opportunity. 919 F.2d at 335; *accord Baumann*, 934 F.2d at 1512–13. Under these circumstances, it is not improper for us to consider the argument for the first time on appeal.

12. Of course, error in the judgment or the proceedings for reviewing it that originated in the court of appeals may be assigned for the first time in the court of appeals to preserve the right to further review by this court. This cause is an example of such a case.