ACCEPTED
03-14-00267-CV
5010309
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/23/2015 3:25:43 PM
JEFFREY D. KYLE
CLERK

**NO. 03-14-00267-CV**

In the Court of Appeals
for the Third Judicial District of Texas
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

4/23/2015 3:25:43 PM

JEFFREY D. KYLE
                        Clerk

**DAISY WANDA GARCIA,**
**Appellant/Defendant,**

**v.**

**THOMAS LEE BAUMGARTEN,**
**Appellee/Plaintiff.**

Appeal from the 201st Judicial District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-12-002429

**APPELLEE'S RESPONSE TO APPELLANT'S EMERGENCY
MOTION TO ABATE, AND REQUEST FOR SANCTIONS**

Nicholas P. Laurent
State Bar No. 24065591
Raymond E. White
State Bar No. 21321950
McGinnis, Lochridge & Kilgore, L.L.P.
600 Congress Avenue, Suite 2100
Austin, Texas  78701
(512) 495-6000
(512) 495-6093 FAX
nlaurent@mcginnislaw.com
rwhite@mcginnislaw.com

ATTORNEYS FOR APPELLEE
THOMAS LEE BAUMGARTEN

# TABLE OF CONTENTS

SUMMARY OF RESPONSE ................................................................................ 1

STATEMENT OF FACTS ................................................................................. 2

ARGUMENT ................................................................................................... 7

    1.    Garcia abandoned and alienated any homestead rights she may have had when she agreed in a written settlement agreement to vacate and sell the Exposition Property. ....................................................................... 7

    2.    Garcia's new contention on appeal that she was married to Baumgarten has been waived because it was not raised at the trial court. ..................................................................................................... 10

    3.    The Family Code presumes Garcia and Baumgarten were not married because Garcia waited thirty-four years to make such a suggestion. ............................................................................................. 10

    4.    Garcia should be estopped from asserting her new contention on appeal because it is contrary to her prior, sworn testimony and is contrary to her current representations to this Court. .................................. 11

    5.    Garcia's Emergency Motion to Abate is nothing more than another attempt to delay these proceedings without cause. ................................... 13

REQUEST FOR SANCTIONS ......................................................................... 14

CONCLUSION ............................................................................................... 15

PRAYER ......................................................................................................... 16

CERTIFICATE OF CONFERENCE ................................................................ 17

WORD COUNT CERTIFICATION ................................................................. 17

CERTIFICATE OF SERVICE ......................................................................... 18

TO THE HONORABLE THIRD COURT OF APPEALS:

## **SUMMARY OF RESPONSE**

Garcia agreed in a written settlement agreement to vacate and sell the property at issue in this case, and in doing so, she waived and released all of the issues on which she bases her Emergency Motion to Abate. Later regretting her decision to agree to vacate and sell the property, Garcia filed numerous motions with the trial court and two motions with this Court in an effort to stop the sale. The trial court denied all of her motions and this Court denied all of her motions. Garcia also filed a motion with the Supreme Court of Texas to stop the sale and the Supreme Court of Texas denied her motion. Garcia still to this day has never posted a supersedeas bond to suspend enforcement of the judgment rendered against her.

Now, in yet another eleventh hour attempt to stop the sale of the property she agreed to sell, Garcia suggests for the first time that she was married to Mr. Baumgarten and that this new issue she manufactures out of whole cloth should stop this appeal from proceeding. Garcia's new argument was never raised before the trial court, is presumed invalid under the Family Code, and is directly contrary to her prior, explicit representation to this Court that she was never married to Mr. Baumgarten. *See* Appellant's Brief at p. 3 ("Baumgarten negotiated the terms of the purchase and arranged that the property would be purchased in

both their names, as husband and wife, **but, of course, they were not married**." (emphasis added)). In fact, this newly manufactured issue is directly contrary to one of Garcia's primary defenses to Mr. Baumgarten's claims at the trial court – that Mr. Baumgarten promised to marry her but did not fulfill his promise.

Garcia's Emergency[1] Motion to Abate is just another delay tactic that should be denied.

### STATEMENT OF FACTS

Baumgarten and Garcia jointly purchased real property in 1979 on Exposition Blvd. in Austin, Texas (the "Exposition Property"). CR 29-32. They resided at the Exposition Property together for a few years and then parted ways, with Baumgarten moving to Houston. CR 61 (p. 78, ln. 7-9). They both continued to be co-owners of the Exposition Property. By Garcia's own admission, she and Baumgarten ceased living together in 1981. *See* Garcia's Emergency Motion to Abate at ¶ 8.

After Baumgarten moved to Houston, Garcia had lawyers ask him to gratuitously sign deeds conveying his 1/2 interest in the Exposition Property to her in 1992 and 2011. CR 185 (p.95, ln. 24-25, p. 96, ln. 1-3), 131-36. Garcia then threatened to sue Baumgarten and Baumgarten filed the underlying lawsuit seeking

---

[1] Garcia does not make clear in her motion why she believes the motion should be considered an emergency or determined on an expedited basis.

to partition the Exposition Property he co-owned with Garcia in a partition sale. CR 131-36, 4-8.

Garcia's two defenses to Baumgarten's partition claims were that she had adversely possessed the property from her cotenant, Baumgarten, and that she had allowed Baumgarten to be on the deed to the Exposition Property because he supposedly promised to marry her, but that he did not follow through on his promise and he should now be estopped from owning an interest in the Exposition Property. *See, e.g.,* CR 584-85.

During Garcia's deposition, she unequivocally stated the following regarding Baumgarten:

Q. Have you ever been married?
**A. No.**
Q. And you're not married now?
**A. No.**

CR 461 (p. 14, ln. 3-6) (emphasis added). *See also* CR 199 (Baumgarten deposition) (p. 150, ln. 23-25) ("Q. Well, were you [Mr. Baumgarten] married to her [Ms. Garcia], that's the question? A. No.").

From the time Garcia and Baumgarten separated in 1981 until March 16, 2015 (when Garcia filed a pro se will contest), Garcia contended she was not married to Baumgarten. Garcia never suggested or even hinted to the trial court that she was married to Baumgarten. Indeed, her contention that she was not married to Baumgarten was a critical part of her defense to Baumgarten's partition

claim. *See, e.g.,* CR 584-85. For example, Garcia stated under oath in an affidavit in responding to Baumgarten's motion for summary judgment:

> In 1977 I decided to buy the Timber Ridge townhome. I used the proceeds of the sale of a rent house in Corpus Christi my father had given me to make the down payment. Tom dealt with the realtor and arranged for the townhouse to be purchased in our names as husband and wife. **We never married,** although he purchased an engagement ring and **I assumed we would marry, but we did not.**
>
> In 1979 we sold the Timber Ridge townhome and used the proceeds to purchase the home at **1901 Exposition**. Again, Tom handled the closing for us, and the home [1901 Exposition Blvd.] was purchased in both our names, **this time not as husband and wife**.

CR 331 (emphasis added).

Garcia's contention that she was not married to Baumgarten was so important to her defenses at the trial court that she affirmatively states as much in page 3 of her brief on the merits currently pending before this Court. *See* Appellant's Brief at p. 3 ("Baumgarten negotiated the terms of the purchase and arranged that the property would be purchased in both their names, as husband and wife, **but, of course, they were not married**." (emphasis added)).

After the trial court correctly rendered summary judgment in favor of Baumgarten on all of Garcia's defenses to the partition claims, the parties agreed to settle the case. CR 312, 383, 532-44. Irrespective of whether they were married or not, Garcia agreed to pay Baumgarten a certain amount in exchange for his 1/2 interest in the Exposition Property. CR 534. It is undisputed she did not do so.

CR 547 at Nos. 68, 69 and 550-51 at ¶ 3. The settlement agreement contemplated such an eventuality and provided that if Garcia did not pay Baumgarten the agreed-upon amount, Garcia would vacate the Exposition Property, the property would be sold, and the proceeds would be divided among the parties. CR 536 at ¶ 8.

The trial court granted Baumgarten summary judgment on his breach of settlement agreement claim on April 18, 2014, ordered Garcia to vacate the Exposition Property, ordered that the Exposition Property be sold, and ordered the proceeds divided among the parties. CR 666-69. This is the judgment Garcia is appealing in this matter.

Despite her written agreement and the trial court's order, Garcia refused to vacate. Consequently, Baumgarten filed a motion to show cause why Garcia should not be held in contempt of the trial court's order.

After Baumgarten filed the motion to show cause, Garcia asked this Court to enter an emergency order enjoining and staying the sale of the Exposition Property pending this appeal. *See* Cause No. 03-14-00282-CV, *In re Daisy Wanda Garcia*, in the Texas Court of Appeals, Third District, at Austin (filed April 28, 2014). This Court denied Garcia's request. *See* Cause No. 03-14-00282-CV, *In re Daisy Wanda Garcia*, in the Texas Court of Appeals, Third District, at Austin, Memorandum Opinion (dated May 16, 2014).

The trial court ultimately set the supersedeas bond amount at $175,000, which represented less than 1/2 of Ms. Garcia's $352,626 net worth. Garcia filed a motion with this Court challenging the amount of the supersedeas bond and this Court denied Garcia's motion. *See* Garcia's Motion for Review of Supersedeas Deposit Amount dated September 12, 2014. Garcia asked for a writ of mandamus from the Supreme Court of Texas and the Supreme Court of Texas summarily denied her writ of mandamus. *See* Notice from Supreme Court of Texas, Case No. 14-0768, *In re Daisy Wanda Garcia*, in the Supreme Court of Texas (dated October 2, 2014). Garcia also filed a Motion for Emergency Stay with the Supreme Court of Texas and the Supreme Court of Texas summarily denied her Motion for Emergency Stay. *See id.*

Garcia never posted a supersedeas bond and, consequently, Baumgarten filed a motion with the trial court seeking to hold Garcia in contempt of court for refusing to vacate the Exposition Property as required by the trial court's judgment. The trial court found Garcia in contempt of court and ordered her to vacate. Garcia was thereafter forcibly removed from the Exposition Property pursuant to a writ of possession served by the Travis County Constable's Office. Pursuant to the trial court's order, the Exposition Property is now under contract to be sold.

On November 21, 2014, Baumgarten passed away. Paul Baumgarten, Thomas Baumgarten's independent executor, filed a Notice of Death of

Appellee/Plaintiff on December 19, 2014 after applying to probate Thomas Baumgarten's will in the Harris County Probate Court No. 2.

After Garcia discovered the Exposition Property was under contract to be sold, on March 16, 2015 she filed a so called "will contest" with the Harris County Probate Court No. 2. In her "will contest," she now "claims she is the common law spouse of Thomas Lee Baumgarten. . . ." *See* Garcia's Emergency Motion to Abate, Exhibit 3, ¶ 2. This is the <u>first</u> time Garcia has ever stated she was married to Baumgarten in these legal proceedings. Garcia's new contention is a total fabrication of the facts and runs directly contrary to her numerous representations to both the trial court and this Court that she was never married to Baumgarten.

## ARGUMENT

1. **Garcia abandoned and alienated any homestead rights she may have had when she agreed in a written settlement agreement to vacate and sell the Exposition Property.**

In some circumstances, a surviving spouse may continue to occupy homestead property, but only so long as he or she does not abandon or alienate the property. TEX. CONST. art. XVI, § 52; TEX. ESTATES CODE §§ 102.002-102.006; *Copeland v. Tarrant Appraisal Dist.*, 906 S.W.2d 148, 151 (Tex. App.—Fort Worth 1995, writ denied). However, a homestead, even as to a surviving spouse, will lose its status as the homestead if it is abandoned or alienated. *See Patterson v. First Nat'l Bank of Lake Jackson*, 921 S.W.2d 240, 246 (Tex. App.—Houston

[14th Dist.] 1996, no writ); *Long Bell Lumber Co. v. Miller*, 240 S.W.2d 405, 406 (Tex. Civ. App.—Amarillo 1951, no writ).

Garcia agreed with Baumgarten in a written settlement that if she did not pay Baumgarten as agreed on or before a date certain for his 1/2 share of the Exposition Property, she would vacate and the Exposition Property would be sold:

> Notwithstanding any of the foregoing, if Garcia is unable to obtain a reverse mortgage within 90 days from the effective date of this Agreement, . . . Baumgarten and Garcia agree that Garcia will vacate the Property within 60 days thereafter, and the parties will list the Property for sale at a price of the average of three appraisals, will use a real estate agent selected by Baumgarten, will sell the Property to the first person or entity who offers at least the list price, with Baumgarten and Garcia splitting the sales proceeds and costs evenly (excluding taxes and insurance, which shall be borne solely by Garcia), and will sign all documents necessary to accomplish such a sale.

CR 536 at ¶ 8.

Garcia's agreement to vacate and sell the Exposition Property can be construed as nothing other than a conscious and deliberate abandonment and alienation of any homestead rights that may have existed, assuming she even had any such rights to begin with. Nothing the Houston probate court determines will vary the terms of the written agreement Garcia executed that constituted a waiver and release of any homestead rights that may have existed. Moreover, the settlement agreement has already been enforced by the trial court; there is nothing the Houston probate court needs to do or can do regarding the Exposition Property.

Additionally, even if Baumgarten and Garcia had been married, which they never were, Baumgarten's will lawfully bequeathed all of his assets to his brother, Paul Baumgarten, which would properly include Baumgarten's purported "community half" of the Exposition Property, depriving Garcia of any standing for her self-styled "will contest." Garcia's Emergency Motion to Abate can be denied on this basis alone.

Moreover, in the settlement agreement Garcia explicitly released the claims upon which her Emergency Motion to Abate are based. The settlement agreement provides:

> Garcia and each of her respective Representatives release, settle, compromise, extinguish, relinquish, absolve, disclaim and forever discharge Baumgarten and each of his respective Representatives of and from any and all rights, claims, counterclaims, charges, causes of action, demands, debts, liabilities, agreements, promises, damages, losses and claims for recovery, fixed or contingent, liquidated or unliquidated, known or unknown, arising at any time from the beginning of time to the Effective Date of this Agreement, in connection with, arising from, or to arise by reason of, any matters asserted in or which might have been asserted in the Lawsuit or which relate in any way, directly or indirectly, to the Lawsuit, any dealings between Baumgarten and Garcia, and/or any other matter, including but not limited to those claims asserted in the Lawsuit for partition, declaratory relief, and attorneys' fees; provided, however, that this release does not affect the Parties' right and obligations under the terms of this Agreement.

CR 537 at ¶ 10. Garcia's Emergency Motion to Abate can also be denied on this basis alone.

**2.**     **Garcia's new contention on appeal that she was married to Baumgarten has been waived because it was not raised at the trial court.**

Garcia suggests in her Emergency Motion to Abate that she has been married to Baumgarten since at least 1969.  *See* Garcia's Emergency Motion to Abate at ¶ 6.  Garcia, however, never once suggested to the trial court that she had been married to Baumgarten at any time, much less some thirty-plus years.  Rather, Garcia's contention that she was married to Baumgarten is being raised for the first time on appeal.  Garcia's failure to raise this argument before the trial court waives the argument in its entirety.  *See* TEX. R. APP. P. 33.1(a)(1)(A); *Larsen v. FDIC/Manager Fund*, 835 S.W.2d 66, 74 (Tex. 1992) ("Under Texas procedure, absent 'fundamental error' not in issue in this appeal, a court of appeals has no discretion to reverse an error-free judgment based on a new argument ('unassigned error' in the trial court) raised for the first time on appeal.").

**3.**     **The Family Code presumes Garcia and Baumgarten were not married because Garcia waited thirty-four years to make such a suggestion.**

Even if Garcia had not waived and released any homestead rights she may have had in the written settlement agreement and had preserved this argument for appeal, her new contention that she was married to Baumgarten is time barred as a matter of law.  The Family Code provides:

> If a proceeding in which a marriage is to be proved as provided by Subsection (a)(2) [an informal or common law marriage] is not commenced before the second anniversary of the date on which the

parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married.

TEX. FAMILY CODE § 2.401(b).

Garcia states in her Emergency Motion to Abate that she was married to Baumgarten in 1969. *See* Emergency Motion to Abate at ¶ 6. Garcia further concedes she ceased living with Baumgarten in 1981. *See id.* at ¶ 8. Under the plain terms of the Family Code, then, there is a rebuttable presumption that Garcia and Baumgarten were <u>not</u> married. Garcia and Baumgarten have also both testified under oath that they were never married to each other, which effectively destroys any possibility that the presumption could ever be rebutted. *See* CR 461 (p. 14, ln. 3-6) and CR 199 (p. 150, ln. 23-25). Garcia's desperation, flip-flop claim that she was married to Baumgarten is thirty-four years too late because she and Baumgarten ceased living together in 1981. *See* TEX. FAMILY CODE § 2.401(b).

**4. Garcia should be estopped from asserting her new contention on appeal because it is contrary to her prior, sworn testimony and is contrary to her current representations to this Court.**

Garcia has represented on numerous occasions to both the trial court and this Court that she was <u>not</u> married to Baumgarten. In Garcia's brief on the merits she filed with this Court on July 1, 2014, she states: "Baumgarten negotiated the terms of the purchase and arranged that the property would be purchased in both their names, as husband and wife, but, **of course, they were not married**." Appellant's Brief at p. 3 (emphasis added). Garcia also previously testified:

Q. Have you ever been married?
**A. No.**
Q. And you're not married now?
**A. No.**

CR 461 (p. 14, ln. 3-6) (emphasis added).

Additionally, Garcia's defense to Baumgarten's partition claims at the trial court and before this Court is that she allowed Baumgarten to be on the deed to the Exposition Property because he promised to marry her, but alas he <u>did not marry her</u> and thus did not fulfill his promise. This defense premised on her non-marriage to Baumgarten was first asserted in Garcia's First Amended Original Answer filed with the trial court on March 22, 2013. CR 12-16. This defense premised on her non-marriage to Baumgarten was reiterated by Garcia in her Second Amended Original Answer filed with the trial court on July 30, 2013 and in her Third Amended Original Answer filed with the trial court on April 8, 2014. CR 384-89 and CR 582-88. Up until a week ago, Garcia has consistently and repeatedly claimed that she and Baumgarten were never married.

Garcia also adamantly reaffirmed that she was never married to Baumgarten in a sworn affidavit she used in responding to Baumgarten's motion for summary judgment on her affirmative defenses. Garcia stated under oath:

> In 1977 I decided to buy the Timber Ridge townhome. I used the proceeds of the sale of a rent house in Corpus Christi my father had given me to make the down payment. Tom dealt with the realtor and arranged for the townhouse to be purchased in our names as husband

and wife. **We never married,** although he purchased an engagement ring and **I assumed we would marry, but we did not.**

In 1979 we sold the Timber Ridge townhome and used the proceeds to purchase the home at **1901 Exposition**. Again, Tom handled the closing for us, and the home [1901 Exposition Blvd.] was purchased in both our names, **this time not as husband and wife**.

CR 331 (emphasis added).

Garcia has exhaustively taken the position, literally for years, that she was not and had never been married to Baumgarten. She should now be estopped from claiming otherwise with her fifth lawyer in this case in what is nothing more than a blatant and wrongful attempt to stop the sale of the Exposition Property.

**5.      Garcia's Emergency Motion to Abate is nothing more than another attempt to delay these proceedings without cause.**

Garcia has tried numerous times to stop the sale of the Exposition Property, despite her agreement to vacate and sell it. Every one of Garcia's motions has been denied. Garcia has asked this Court twice to stop the sale and both motions were denied. Garcia has asked the Supreme Court of Texas to stop the sale and the Supreme Court of Texas has denied Garcia's request. All of Garcia's motions have been denied because Garcia plainly has a remedy under the Texas Rules of Appellate Procedure to stop the sale – she may post a supersedeas bond. *See* TEX. R. APP. P. 24. Garcia has chosen not to do so and cannot be permitted to continue trying to manufacture new ways to supplant the requirements of TEX. R. APP. P. 24.

Garcia's exhaustive motion practice in an improper and bad faith effort to stop the sale of the Exposition Property has caused the parties to unnecessarily incur thousands upon thousands of dollars in attorneys' fees. Garcia's efforts to make an end run around the Rules of Appellate Procedure should, again, be squarely rejected.

## REQUEST FOR SANCTIONS

Counsel for Baumgarten is always loathe to request sanctions in any proceeding, particularly in appellate proceedings, given the usual decorum demonstrated by counsel in appellate matters. Nevertheless, Garcia's conduct in hiring and firing multiple lawyers to make a eleventh hour diametrically contrary argument out of desperation and whenever convenient for her to do so unnecessarily and unfairly drives up litigation costs. For example, Baumgarten has responded to Garcia's argument on the merits that is premised on her non-marriage to Baumgarten. It is unclear, now, if Garcia continues to urge that defense because now she has now decided to change course and take the opposite position. This creates a moving target or shell game of sorts and unfairly prejudices Baumgarten in that he is not given a fair opportunity to respond to a cognizable legal argument. If Garcia is permitted to hire and fire new lawyers to take whatever position is convenient for her at the time, it makes a mockery of our judicial system.

Consequently, Baumgarten requests that the Court sanction Garcia in the amount of at least $2,500 for filing a frivolous pleading and order a show cause hearing for her new counsel of record, Stephen Casey, to demonstrate the reasonably diligent investigation he conducted into the allegations asserted, in light of Garcia's sworn testimony and pleadings to the absolute contrary throughout this litigation up to this point. *See, e.g.,* TEX. R. APP. P. 45.

## CONCLUSION

When Garcia agreed in a written settlement agreement to vacate and sell the Exposition Property she also waived and released all of the issues on which her Emergency Motion to Abate is based. Garcia's Emergency Motion to Abate can be denied on that basis alone.

Even if Garcia had not already waived and released all of the issues upon which her Emergency Motion to Abate is based, she should be estopped from flip-flopping her litigation position at the eleventh hour. Garcia has always maintained she was never married to Baumgarten, has stated as much multiple times under oath, and is currently representing to this Court in her brief on the merits that she was never married to Baumgarten. Garcia's attempts to stop the sale of the Exposition Property while skirting the requirements of TEX. R. APP. P. 24 should be rejected and her Emergency Motion to Abate should be denied.

## PRAYER

Appellee respectfully prays that the Court deny Appellant's Emergency Motion to Abate, impose sanctions on Garcia for filing a frivolous pleading, order a show cause hearing for Garcia's new counsel of record, Stephen Casey, to demonstrate the reasonably diligent investigation he conducted into the allegations asserted, and grant all other relief to which Appellee may show himself entitled.

Respectfully submitted,

Nicholas P. Laurent
State Bar No. 24065591
Raymond E. White
State Bar No. 21321950
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000
(512) 495-6093 FAX
nlaurent@mcginnislaw.com
rwhite@mcginnislaw.com

By: */s/ Nicholas P. Laurent*
Nicholas P. Laurent

ATTORNEYS FOR APPELLEE
THOMAS LEE BAUMGARTEN

## CERTIFICATE OF CONFERENCE

I certify that on April 14, 2015, I sent a detailed email to Stephen Casey and John Foster, counsel for Garcia, with quotations and references to specific pleadings, deposition testimony, and similar materials that directly contradict Garcia's new factual and legal position as stated in her Emergency Motion to Abate. Mr. Casey was further advised that if Garcia continued to urge her Emergency Motion to Abate that Mr. Baumgarten may be forced to request relief from the Court in connection with her motion, including a request for sanctions. Mr. Casey responded and refused to withdraw the Emergency Motion to Abate.

*/s/ Nicholas P. Laurent*
Nicholas P. Laurent


## WORD COUNT CERTIFICATION

I certify that the foregoing Appellee's Response to Appellant's Emergency Motion to Abate, and Request for Sanctions was prepared with Microsoft Word 2007, and that, according to that program's word-count function, the sections covered by TEX. R. APP. P. 9.4(i)(1) contain 3,731 words.

*/s/ Nicholas P. Laurent*
Nicholas P. Laurent

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and complete copy of the above and foregoing Appellee's Response to Appellant's Emergency Motion to Abate, and Request for Sanctions was sent by electronic mail and certified mail, return receipt requested on this the 23th day of April, 2015 to the following:

Mr. John L. Foster
812 San Antonio Street, Suite 400
Austin, Texas 78701
(512) 476-4473
(512) 474-1606 (fax)
john@johnlfoster.com

ATTORNEYS FOR APPELLANT
DAISY WANDA GARCIA

Mr. Stephen Casey
Casey Law Office, P.C.
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681
(512) 257-1324
(512) 853-4098 (fax)
info@caseylawoffice.us

ATTORNEYS FOR APPELLANT
DAISY WANDA GARCIA

*/s/ Nicholas P. Laurent*
Nicholas P. Laurent